9 So.3d 826 (2009)
Monique Bossiere DEJOIE
v.
The Honorable Lloyd J. MEDLEY, Jr., et al.
No. 2008-C-2223.
Supreme Court of Louisiana.
May 5, 2009.
Rehearing Denied May 29, 2009.
*827 James D. Caldwell, Attorney General, Hymel, Davis & Petersen, L.J. Hymel, Jr., Michael Reese Davis, Baton Rouge, Tim Paul Hartdegen, Special Assistant Attorneys General, for applicant.
Moore, Walters, Thompson, Thomas, Papillion & Cull, David Abboud Thomas, Charles Roger Moore, Baton Rouge, for respondent.
WEIMER, Justice.
This matter is before this court following a motion for summary judgment filed by the State of Louisiana, the sole remaining defendant, seeking dismissal of plaintiff's suit alleging gender and pregnancy discrimination based on the Louisiana Employment Discrimination Law (LEDL). LSA-R.S. 23:301, et seq. The appellate court reversed the trial court judgment in favor of the State. The State applied for writ of certiorari which this court granted.
For reasons that follow, we reverse the ruling of the court of appeal and reinstate the decision of the trial court granting the State's motion for summary judgment and dismissing plaintiff's suit. We find that for the purposes of the LEDL, plaintiff is not a state employee because the State did not provide compensation to the plaintiff.

FACTS AND PROCEDURAL HISTORY
Monique Bossiere Dejoie began working as a clerk in the Civil District Court (CDC) for the Parish of Orleans on October 23, 1995. Initially she worked with Judge Niles Hellmers. In January 1997, plaintiff was assigned to Division D as a minute clerk and worked with Judge Lloyd Medley, Jr. At all times pertinent to this litigation, Ms. Dejoie was paid through the Judicial Expense Fund (JEF). In January 2000, she took a maternity leave of absence. In early 2003 she again became pregnant. On May 21, 2003, the employees who were paid through the JEF were notified by letter that paid short-term disability benefits would be discontinued subject to one exception. Any employee having a surgical procedure prior to July 1, 2003, and any employee delivering a baby before year-end would be permitted to exercise a one-time short-term disability option provided the request was submitted on or before May 30, 2003. Ms. Dejoie complied and was granted a sixty-day leave.
Having experienced complications with her pregnancy, Ms. Dejoie submitted a request that her paid short-term disability be extended an additional 60 days. During the October 2003 meeting, the court sitting en banc denied that request. However, Ms. Dejoie was granted an extended unpaid leave of absence.
During the time Ms. Dejoie was on extended leave, Judge Medley restructured his office. Upon her return, Ms. Dejoie was notified that the position of minute clerk had been eliminated.
Plaintiff filed a claim alleging gender and pregnancy discrimination based on the provisions of the LEDL,[1] naming as defendants, the Honorable Lloyd J. Medley, Jr., the Judicial Expense Fund of the CDC for the Parish of Orleans, and the State of Louisiana through the CDC for the Parish of Orleans. An amended petition added the judges of the CDC for the Parish of Orleans and the First and Second City Courts of New Orleans sitting "En Banc," as well as numerous individual judges.
Following a series of motions, exceptions, and trial court rulings, the parties filed for supervisory writs. After all the judges of the Fourth Circuit Court of Appeal *828 recused themselves, this court reassigned the case to the Second Circuit Court of Appeal. The writs were converted to an appeal. The appellate court reversed the granting of the exception of lack of procedural capacity of the State through the CDC, reversed the denial of the exception of lack of procedural capacity of the JEF, affirmed the granting of the exception of lack of procedural capacity to the Judges en banc, and, on its own motion, held that plaintiff failed to state a cause of action as to the individual judges. The district court judgment was affirmed in part, reversed in part, and remanded for further proceedings. Dejoie v. Medley, 41,333 (La.App. 2 Cir. 12/20/06), 945 So.2d 968. Following that decision by the Second Circuit, the State of Louisiana was the only remaining defendant in the lawsuit.
Subsequently, the State filed a motion for summary judgment alleging that pursuant to the definition of "employer" contained in the LEDL, the State was not plaintiff's employer as it did not give compensation to plaintiff and did not receive services from plaintiff. The trial court conducted a hearing on the motion for summary judgment, granted the State's motion and dismissed plaintiff's suit. Plaintiff appealed. Because of the recusal of the judges of the Fourth Circuit Court of Appeal, this court again transferred the case to the Second Circuit Court of Appeal.
The appellate court found that the judges of the CDC, as members of the state judiciary, paid plaintiff's salary from the JEF for work performed for the court. Thus, the court reasoned that the State received services from the plaintiff and in return gave her compensation. Finding the State was plaintiff's employer for purposes of the LEDL, the court of appeal reversed. Dejoie v. Medley, 43,448 (La. App. 2 Cir. 8/13/08), 990 So.2d 1291.
The State applied for a writ of certiorari which this court granted to determine the propriety of the decision of the court of appeal. Dejoie v. Medley, 08-2223 (La. 11/26/08), 997 So.2d 540.

DISCUSSION
In brief to this court, the State argues the appellate court erred in holding the State gave plaintiff compensation and in concluding the State was plaintiff's employer for the purposes of the LEDL. The State argues it did not provide plaintiff with wages, benefits, or any other form of compensation.
The plaintiff argues, consistently with the court of appeal's finding, that the source of the funds used to pay her compensation is irrelevant. The plaintiff argues the judges of the CDC are part of the state judiciary and each judge is an agent of the State. By providing services to the judiciary, plaintiff claims she is providing services to the State. Since the judges control expenditure of the funds in the JEF, plaintiff contends it is the State through the CDC that gives her compensation.
We are called upon to determine whether plaintiff, who was employed to work with a judge of the CDC of the Parish of Orleans and who was paid compensation from funds in the JEF, is an employee of the State based on the provisions of the LEDL, now LSA-R.S. 23:301, et seq.[2] We *829 look to the following definitions in LSA-RS. 23:302:
(1) "Employee" means an individual employed by an employer.
(2) "Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. "Employer" shall also include an insurer, as defined in R.S. 22:46, with respect to appointment of agents, regardless of the character of the agent's employment.
The courts, in deciding cases under the prior definition of "employer," recognized that determination of the existence of an employer-employee relationship ordinarily relates to the right of control; however, the legislature assigned a specific definition for "employer" for purposes of the discrimination statute. In determining whether an employer provides compensation to an employee, Louisiana courts have considered such factors as: who paid the employee's wages; who withheld federal, state, unemployment, or social security taxes; whether the employee's name appeared on the employer's payroll; and whether the employee participated in the employer's benefit plans. See Duplessis v. Warren Petroleum, Inc., 95-1794 (La.App. 4 Cir. 3/27/96), 672 So.2d 1019, 1023; Onyeanusi v. Times-Picayune Publishing Corporation, 485 So.2d 622, 623 (La.App. 4 Cir.1986).[3]
The critical language of LSA-R.S. 23:302(2) is the phrase "receiving services from an employee and, in return, giving compensation of any kind to an employee." The narrow issue presented for review is whether the State received services from plaintiff and gave compensation of any kind to plaintiff.
The starting point for the interpretation of any statute is the language of the statute itself. SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX, p. 12 (La.6/29/01), 808 So.2d 294, 302; Cat's Meow, Inc. v. City of New Orleans, Department of Finance, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the statute is applied as written, and no further interpretation may be made in search of legislative intent. See LSA-C.C. art. 9; LSA-R.S. 1:4.
We begin with an analysis of the statutory definition of "employer" contained in the LEDL. The legislature gave "employer" a specific definition which governs in an action alleging discrimination in employment *830 based on the LEDL. To be an employer for the purposes of the LEDL one must 1) receive services from an employee[4]and in return give compensation to that employee and 2) must meet the requirement of a minimum number of employees (currently twenty or more).
In determining whether an employer gave compensation, factors to consider include: who paid the employee's wages; who withheld federal, state, unemployment, or social security taxes; whether the employee's name appeared on the employer's payroll; and whether the employee participated in the employer's benefit plans. Central to the determination of whether one is an employer for purposes of the LEDL is whether the defendant paid the plaintiff's wages and withheld federal, state, unemployment, or social security taxes from his check. Onyeanusi, 485 So.2d at 623. In evaluating each factor, we find it was the JEF which gave compensation.
The parties do not dispute the fact that Ms. Dejoie was originally employed as a minute clerk for Judge Hellmers and later assigned to Judge Medley. Also undisputed is the fact that plaintiff received compensation and benefits through the JEF. The record indicates, and plaintiff has admitted, that she was paid through the JEF. Plaintiff's paychecks were processed through the JEF account. Federal and state tax forms, such as the W-2, listed the JEF as plaintiff's employer, indicating a federal employer's identification number and a State employer's identification number for the JEF.
In determining whether the State gave the plaintiff compensation and was thus the plaintiff's employer pursuant to the LEDL, it is necessary to consider the source of the funds used to compensate the plaintiff. The legislature granted authority for each judge of the CDC to appoint one minute clerk to be paid wages fixed by the court en banc. LSA-R.S. 13:1211. Additionally, the judges of the CDC and First and Second City Courts for the Parish of Orleans, en banc, were granted authority to appoint court personnel and "fix and pay all or any part of the salaries of such personnel out of the monies in the judicial expense fund." LSA-R.S. 13:1312(C).
The funds contained in the JEF are not State funds but are self-generated funds collected pursuant to the provisions of LSA-R.S. 13:1312.[5] All monies received *831 by the State or by any state board, agency, or commission shall be deposited immediately upon receipt in the state treasury, according to La. Const. art. 7, § 9. The funds received by the JEF are not placed in the state treasury.
A statute addressing state funds is LSA-R.S. 49:308, which provides, in part:
A. All money received by the state or by any state board, commission, or agency shall be deposited immediately upon receipt in the state treasury, except that received:
....
(7) By a levee district or political subdivision, unless the full faith and credit of the state is pledged to the payment of the bonds of the levee district or political subdivision.
....
E. (1) "State or state board, agency, or commission", as used in Subsection A of this Section, means any state office, department, board, commission, institution, division, officer, or other person or functional group authorized to exercise or that does exercise any functions of the government of the state.
(2) The term does not include:
(a) Offices and officers referred to in Article V [Judicial Branch] of the constitution of Louisiana.
....
F. "Political subdivision" as used in Paragraph (7) of Subsection A of this Section means any judicial circuit, judicial district, office of public defender within a judicial district, school board, parish, municipality, or any other unit of local government, including a special district authorized by law to perform governmental functions. The term special district includes a parishwide special district, a special district within a parish, multi-parish districts, and all port authorities, boards, commissions and districts.
Thus, the statute provides for immediate deposit of state funds, but the funds of the judicial branch, as designated in the Louisiana Constitution, and the political subdivisions, as described in the statute, are excepted by the statute from the deposit requirement. Considering the above referenced provisions, we conclude the funds in the JEF are not state funds.
The court of appeal held that the source of the funds for the payment of the plaintiff's salary was irrelevant. We disagree. Based on the language of the definition of "employer" utilized in the statute, the source of the funds is essential to the analysis. In this instance, the State did not give compensation as required by the LEDL because no state funds were involved in compensating the plaintiff. This determination is consistent with the narrow and specific definition of "employer" in the LEDL. All of the funds used to compensate the plaintiff were self-generated funds deposited into the JEF account and were not state funds.
Simply stated, the State, for purposes of the LEDL, is not the plaintiff's employer because the State did not give compensation of any kind to her.
In light of this analysis, we consider whether summary judgment is appropriate. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana *832 State University, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. LSA-C.C.P. art. 966(B).
When a motion for summary judgment has been made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B).
The State argues it met its burden under LSA-C.C.P. art. 966(C)(2) by showing that all compensation and benefits provided to plaintiff came from the JEF and were not state funds. The burden, therefore, shifted to plaintiff to prove that the State gave her compensation. The State argues that plaintiff submitted no evidence showing that the State gave compensation. Since there was no issue of material fact regarding compensation, the State argues it was entitled to summary judgment.
We find that the State has met its burden of proof that the funds used to compensate plaintiff are JEF funds. The plaintiff failed to rebut this factually. Additionally, based on the legal analysis conducted above, the funds in the JEF are not state funds. Thus, the facts and law establish that the State did not give plaintiff compensation and, thus, was not her employer for purposes of the LEDL.[6] The trial court judgment granting the State's motion for summary judgment was correct.
Under the terms of the LEDL, the employer must both receive services from an employee and, in return, give compensation of any kind to an employee. Finding that the State did not provide compensation to plaintiff and was, thus, not her employer for purposes of the LEDL, we pretermit the issue of whether the State received plaintiff's services.

CONCLUSION
For the foregoing reasons, we reverse the ruling of the court of appeal and reinstate the judgment of the trial court granting the State's motion for summary judgment and dismissing plaintiff's suit.
REVERSED. TRIAL COURT JUDGMENT REINSTATED.
JOHNSON and VICTORY, JJ., dissent and assign reasons.
JOHNSON, Justice, dissents.
I respectfully disagree with the majority's decision to reverse the ruling of the court of appeal and reinstate the trial court's decision to grant the State's motion for summary judgment.
In analyzing whether the State of Louisiana is the Plaintiff's employer under the Louisiana Employment Discrimination Law, LSA-R.S. 23:302 provides in pertinent part that:
(1) "Employee" means an individual employed by an employer.
(2) "Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, *833 or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding....
The abovementioned statute provides that there are two requirements needed to be classified as an "employer," i.e., the entity must receive services and give compensation. In this matter, Plaintiff was hired or appointed as a minute clerk by Judge Lloyd Medley, a member of the state's judiciary, and received compensation from the Court's Judicial Expense Fund for her duties which expedited the functioning of the Civil District Court.
Pursuant to LSA-Const. Art. 5, Sec. 1, the judicial power of the state is constitutionally vested in the courts. I agree with the appellate court's determination that the judiciary, although a separate branch of state government, is an agency of the state. The judges created the Judicial Expense Fund, by statute to collect fees, and pay the salaries of employees, and other expenses of operating the civil courts. According to LSA-R. S. 13:1211, "each judge of Civil District Court shall appoint one minute clerk, who shall be sworn as deputy clerk, and shall receive a salary as the court en banc may fix."
The Judicial Expense Fund is controlled and disbursed by the judges of Civil District Court en banc. Contrary to the representations made, the Civil Court's Judicial Expense Fund employs more than 25 persons, and would be subject to a claim for discrimination under LSA-R.S. 23:302 and LSA-R.S. 23:341(A). The source of the funds should not be the determining factor in deciding whether Plaintiff is a state employee. The State argues that Plaintiff's claim is defeated because she was paid with self generated filing fees, rather than with monies from the State Treasury. In my view, Plaintiff provided services for a state agency, and was therefore a state employee, despite the fact that she was paid directly by the Judicial Expense Fund.
VICTORY, J., dissenting.
I dissent from the majority opinion holding that the State is not the plaintiff's employer for purposes of the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301, et seq. La. R.S. 23:303 gives a plaintiff who has a cause of action under the LEDL the right to sue his or her "employer" for damages. In this case, the plaintiff alleged gender and pregnancy discrimination against Judge Medley (in whose section of court she was assigned), the Judicial Expense Fund of the Civil District Court of Orleans Parish ("JEF") (the fund that issued her paycheck), and the State through the CDC for Orleans Parish, as well as numerous individual and groups of judges. At the time this motion for summary judgment was filed, the State was the only remaining defendant.
La. R.S. 23:302(2) defines "employer," in pertinent part, as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee." The majority opinion concludes that the State is not the plaintiff's employer because the source of the funds used to pay her wages, the JEF, are not state funds. I disagree with this analysis.
The plaintiff in this case was hired by judges of the CDC, and those judges are part of the state judiciary. The state pays the salaries of all state judges. The plaintiff provided services to the judges, i.e., *834 the state. In return, the plaintiff was paid compensation by these state judges through the JEF. Pursuant to La. R.S. 13:1312(A), the judges, en banc, of the CDC and the First and Second City Courts of the City of New Orleans "shall have control over the fund and all disbursement made therefrom." La. R.S. 13:1312(C) gives the judges the power to "appoint such secretarial, clerical, research, administrative, or other personnel as they deem necessary to expedite the business and function of the court and fix and pay all or any part of the salaries of such personnel out of the monies in the judicial expense fund." There is no doubt that the funds in the JEF are self-generated funds that are not required to be deposited in the state treasury. However, that does not mean that they are not state funds, for the judges of the CDC are members of the state judiciary and they have control over these funds. Further, the majority's holding suggests that this plaintiff can never sue anyone under the LEDL for gender discrimination because she has no employer at all under the LEDL. The majority opinion says that although she is paid through the JEF, she does not provide services to the JEF as required by La. R.S. 23:302(2). Finally, the plaintiff has sued "the State of Louisiana through the CDC for the Parish of Orleans." Surely, the CDC is her employer as the CDC is "receiving services from [the plaintiff] and, in return giving compensation" to her through the JEF. The CDC cannot logically be "the State" for the purposes of receiving services, but not "the State" for the purpose of giving compensation. Because this opinion results in the unfair and illogical holding that the plaintiff has no employer at all for purposes of the LEDL, I respectfully dissent.
NOTES
[1] LSA-R.S. 23:301, et seq.
[2] Prior to 1997, Louisiana's employment discrimination law was found in LSA-R.S. 23:1006-1008. LSA-R. S. 23:1006-1008 was repealed by 1997 La. Acts, No. 1409 § 4, eff. Aug. 1, 1997. Under Section 1 of the same act, the current statute, LSA-R.S. 23:301, et seq., was added.

Former LSA-R.S. 23:1006 provided in part:
A. (1) For the purpose of this Part, "employer" means and includes a person, association, legal or commercial entity, labor union, employment agency, the state, its agencies, boards, commissions, or political subdivisions receiving services from an individual and in return giving compensation of any kind to said individual and who employs more than fifteen employees.
This language is virtually identical to the current provision.
[3] Several federal district court cases have addressed the issue of determining who the "employer" was for purposes of a discrimination claim in Louisiana. See Dorgan v. Foster, 2006 WL 2457118 (E.D.La.2006); Seal v. Gateway Companies, Inc., 2002 WL 10456 (E.D.La.2002); Langley v. Pinkerton's Inc., 220 F. Supp.2d 575 (M.D.La.2002); McKee v. Gulf States Specialties, Inc., 2001 WL 1143167 (E.D.La.2001). These courts adopted the same analysis and considered the same factors as the state courts in determining who is an employer for the purpose of the LEDL.
[4] In argument before this court, the State did not contest whether the plaintiff provided services to the State.
[5] LSA-R.S. 13:1312 provides, in pertinent part:

A. The clerk of the Civil District Court, the clerks of the First and Second City Court, the register of conveyances, and the recorder of mortgages shall place all sums collected or received under this Section in a separate account to be designated as the Judicial Expense Fund for the Civil District Court for the Parish of Orleans. The judges, en banc, of the Civil District Court for the Parish of Orleans and the First and Second City Courts of the city of New Orleans shall have control over the fund and all disbursements made therefrom....
B. The judges of the Civil District Court for the Parish of Orleans and the First and Second City Courts of the city of New Orleans, sitting en banc, shall have control over the judicial expense fund for the parish of Orleans, accruing and accrued, and to this end shall fix and regulate from time to time the number of deputies and employees of the offices of the clerk of the Civil District Court, the city courts, register of conveyances, and recorder of mortgages of said parish and their expenses, and also shall have the power to fix the tariff of costs and charges to be paid for official services in said offices, which are paid into, and constitute said fund.
[6] It should be noted not every employee is statutorily entitled to bring a cause of action for discrimination pursuant to the LEDL. For example, an employer which does not meet the requisite minimum number of employees prescribed by the statute does not fit within the statute.