Clark, Justice,
dissenting.
hi respectfully dissent from the majority opinion for the reasons that follow. “[T]he paramount consideration in statutory construction is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law.” M.J. Farms, Ltd. v. Exxon Mobil Corp., 2007-2371, p. 13 (La. 7/1/08), 998 So.2d 16, 27, citing State v. Johnson, 2003-2993, p. 12 (La. 10/19/04), 884 So.2d 668, 675. It is well established that “[t]he starting point for the interpretation of any statute is the language of the statute itself.” Dejoie v. Medley, 2008-2223 (La. 6/5/09), 9 So.3d 826, 829. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision is applied as written with no further interpretation made in search of the legislature’s intent. Id.’, La. Civ.Codé art. 9; La. R.S. 1:4.
At issue, La. C.C. art. 2329 clearly states, in no ambiguous terms:'
Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marnage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal ’ regime by a matrimonial agreement at any time without court approval.
[Emphasis added]. A clear reading'of the code article sets forth two requirements before spouses can terminate a matrimonial regime during the marriage: (1) a lajoint petition by the spouses and (2) a finding by the court that the parties understand the consequences of their action and that such action serves their best interests. The legislature’s use of the word “only” and the conjunction “and” leave but one conclusion that both requirements must be satisfied .for the matrimonial agreement to have any legal effect.
The legislature expressly mandated the necessary, steps for spouses to take to terminate the community property regime. The majority is correct in' noting that the Civil Code does not provide an express remedy for the occasion when one of the steps is not met. However, I disagree with the conclusion my colleagues reach as to what type of nullity applies.
As governed by La.C.C. Art.- 2030, absolute nullities apply to contracts that violate “a rule of public order.” Conversely, a contract is relatively null when it violates a rule “intended for the protection of private parties.” See La. C.C. art. 2031. Here, I *306 believe the majority erred in finding that Article 2329. is a rule intended only for the protection of private parties. While a primary intention of the article may be to safeguard the interest of an unsuspecting spouse, it does not preclude the existence of other intentions, namely, to protect the rights of the public at large. The legal regime of a couple, whether separate or community, affects the rights of far more people, classes, and institutions than just the parties themselves. Creditors, heirs, ■and legatees are affected, to name a few, as are the overarching systems of .property ownership, successions, inheritance, and obligations. For these reasons, I find the failure to strictly comply with the mandates of Article 2329: renders the matrimonial agreement absolutely null. I would affirm the judgment of the trial court.