HUGHES, J.[1]
_JjWe granted the writ application in this case to review the applicability "of La. R.S. 9:2795.3, the Equine Immunity Statute. The trial court granted a motion for sura-mary judgment filed by Equest Farm, LLC, finding that the immunity statute applied because plaintiff Danielle Larson was a participant engaged in equine activity at the time the Equest Farm pony bit her. The court of appeal reversed, holding that Larson was not a “participant” under the immunity statute, and that summary judgment was inappropriate because there were genuine issues of material fact as to whether another provision in the immunity statute .might apply. We hold that there are genuine issues of material fact on the issue of whether the immunity statute applies. Accordingly, we affirm the court of appeal and remand to the trial court.
Facts
This suit concerns a horse bite injury sustained in 2013 by Danielle Larson, who visited Equest Farm for the purpose of visiting and feeding horses owned by that facility. Equest Farm is located in City Park in New Orleans, and it boards horses as well as offers camps, lessons, field trips, and birthday parties with horses.
LLarson, an Illinois resident, frequently came to the New Orleans area to visit her boyfriend. Larson testified that she has never owned a horse but that she had been riding horses since childhood- and she rode horses at a stable in Illinois. Larson testified that she had previously been shown how to feed a horse: with a flat hand, fingers together so that they are angled down and not sticking up. Larson testified that in the past she had fed horses com *414 mon treats such as carrots, apples, and sugar cubes.
Larson testified in her deposition that she had been visiting Equest Farm since 2011 or 2012 to “talk to them” and “give them love and affection.” Larson testified that prior to the incident she had visited Equest Farm at least six times and that she tried to go every time she visited New Orleans. Larson testified that each time she went to Equest Farm for a visit she would first check in with someone from the equestrian center front office before heading into the stables. Larson testified that during a previous visit, a man who appeared to work for Equest Farm gave her mints to feed the horses. Approximately five days before the date of the accident, Larson dropped by Equest Farm to ask if in the coming days she could visit with the school horses, which are horses owned by facility used for lessons. She also wanted to return with treats and was seeking advice on what the horses liked. Larson said she spoke with someone who worked in the office, named Kaley or Kiley, who told her she could return with certain treats, including carrots, and feed and visit with the school horses.
When Larson returned with carrots on Monday, September 23, 2013, the Equest Farm office was closed in accordance with its regular schedule, and Larson proceeded to the stalls where the school horses were kept. On her way, she encountered two riders who boarded horses at Equest Farm, Joanna Deal and RSusan Gegen-heimer. Larson told them that she was going to feed the school horses carrots. Ms. Deal and Ms. Gegenheimer told Larson to be careful because they heard one of the school ponies had bitten a child.
As Larson was visiting with the school horses, she arrived at a stall where a pony, Wesley, was standing at the gate. Larson placed a carrot in her hand and held it out, but the carrot was knocked from her hand by the horse, causing the carrot to fall to the ground. As Larson squatted down to pick up the carrot, Wesley also reached for the carrot. Instead of biting the carrot, however, Wesley bit off Larson’s thumb.
Larson required substantial medical care. Doctors attached her injured hand to her groin for four weeks to keep what remained of her hand viable. Larson will have to be fitted for a prosthetic thumb or transfer a toe to her hand.
There is a dispute about the signage that was posted on the day of the incident. Larson testified that she did not see any signs at Equest Farm prohibiting visitors from feeding the horses. Ms. Deal also testified that on the day of the accident she did not recall any such signs, but that she did not go into the school horse barn often. Ms. Gegenheimer also testified that at the time of the accident she was not aware of any rules that would prevent visitors from feeding the horses. Ms. Ge-genheimer further testified that she did not see any signage specifically warning others about a prior nipping incident involving Wesley. Equest Farm LLC, member Leslie Kramer averred by affidavit that there have been signs posted since 2011 that feeding treats or petting horses is not allowed. She averred that the signs stated visitors could “look but not touch” the horses.
As for Wesley, he appears to have a good reputation at Equest Farm, although it is not without blemish. Ms. Deal testified that she saw small children [4ride on Wesley. Ms. Gegenheimer testified he was a “great lesson horse.” Ms. Kramer averred that Wesley “is considered to be one of Equest Farm’s best school ponies.” Ms. Kramer also averred that the only other time Wesley has bitten anyone was when a child who had been riding him was holding his ears and muzzle trying to get him to *415 kiss her. Wesley nipped her and bruised her cheek, however, the student continued to take lessons riding Wesley, and no lawsuit was filed.
Procedural History
Larson filed a Petition for Damages alleging that Equest Farm and its insurer were liable for her injuries under theories of negligence and strict liability. Equest Farm filed a Motion for Summary Judgment, which argued that Larson’s suit should be dismissed due to the applicability of the Equine Immunity Statute, La. R.£j. 9:2795.3. Equest Farm asserted that Larson was a “participant” who was injured as a result of inherent risks of equine activity, and under the Equine Immunity Statute, the facts of her case preclude her from recovery against Equest Farm.
The trial court granted Equest Farm’s Motion for Summary Judgment, dismissing Larson’s suit. In reasons given from the bench, the trial court found:
I believe that when you went and touched—when you touched that horse, when you went to feed that horse it was equine activity. You’re not a spectator and it could be—somebody could say that it’s inspecting. I don’t know. Evaluating, I don’t know. But I don’t know what that means. I do know horses and I know that you feed a horse, like this (Indicating), and I know if you drop that carrot a horse takes his tongue and he felt the finger and feels like a carrot, and he bites it.
Now, again, you’re saying maybe that’s comparative fault, whatever. That’s not a dangerous animal. I mean, that’s not—he didn’t do anything negligent. He did what a horse does. That’s all you get ....
And just the way he looks, his eyes are way up here, his mouth is way down here. I mean, we own horses. And it’s ugly. That picture that was submitted to us is absolutely ugly ....
|BI think the Fourth Circuit needs to look at it. The [Fjourth Circuit needs to tell me it was equine activity. I do. I think they need to tell me that. Because I do think she took herself out of a spectator position. Had she stayed behind and the horse came over and bit her, I’m with you. But when you go and put yourself in the middle of it, and you knew horses—what your client says, she loves horses, she knows them, she does that. I just don’t know. I think the definition—you know maybe you’re right but somebody might say that’s inspecting, that’s evaluating. I don’t know; But I think you need to let the Fourth Circuit tell you that I’m wrong. So I’m granting your Summary Judgment.
Larson appealed. The court of appeal reversed the summary judgment, finding that Larson was not a participant engaged in equine activity, and thus Equest Farm was not afforded immunity under the statute. Larson v. XYZ Ins., 2015-0704 (La. App. 4 Cir. 3/23/16), 192 So.3d 181. The appeal court concluded that the definition of “engages in equine activity” found in subsection .(A)(1) of the statute, which must be strictly construed, does not include “a visitor to a stable who feeds treats to a horse.” Id. at p.10, 187. The court noted that the definitions of “equine activity”' listed in subsection (A)(3) are to be considered in determining whether someone is a participant. Id. at p. 12, 189. However, the court of appeal determined that Larson was not “inspecting” or “evaluating” under subsection (A)(3)(d). Id. Larson’s visit to see the horses and give them “love and affection” does not meet the dictionary definitions of inspect or evaluate, and dictionary definitions are to be used because the statute does not define these terms. Id. Thus, the court of *416 appeal concluded that-Larson was not a participant under the Equine Immunity Statute.
The majority[2] also opined that even if Larson was a “spectator” pursuant to Subsection (A)(1), the statute could'still provide Equest Farm with immunity -if Larson, as a spectator, placed herself in an unauthorized area. Id. at p. 13, 189. The | f,court of appeal -found that there were genuine issues of material fact on this issue that-bar summary judgment. Specifically, Larson and the two riders testified that they could not recall- seeing signs that prohibited touching or feeding the horses. Id. at pp. 14-15, 190. But according to an affidavit of Ms. Kramer[3], such signs were posted. Id. at p. 15, 190. The court of appeal stated that whether Equest Farm is entitled to immunity under La. R.S. 9:2795.3 at this juncture should be decided by a trier of fact. Id. The court of appeal thus reversed the grant of summary judgment and remanded to the trial court for further proceedings. Id. .
Equest Farm filed an application for certiorari, which this court granted. Larson v. XYZ Ins. Co., 2016-0745 (La. 6/28/16), 192 So.3d 782.
Lav and Analysis
Appellate courts review summary" judgments de novo-under the same criteria that govern a distrfct court’s consideration of whether summary judgment is appropriate. Greemon v. City of Bossier City, 2010-2828 (La. 7/1/11), 65 So.3d 1263, 1267; Samaha v. Rau, 2007-1726 (La. 2/26/08), 977 So.2d 880, 882; Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, 2002-1072 (La. 4/9/03), 842 So.2d 373, 377. In ruling on a motion for summary -judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party’s favor. Hines v. Garrett, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765. A fact is material if it potentially ensures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one [ 7conclusion, there is no need for a trial on that issue and summary judgment is appropriate. Id. at 765-66.
On motion for summary judgment, the burden of proof remains with the mov-ant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one" or more elements essential to the adverse party’s claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. See La. G.C.P. art. 966(D)(1); see also Schultz v. Guoth, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006.
When a motion for summary judgment is made and supported as provided in La. C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in La. *417 C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B); see also Dejoie v. Medley, 2008-2223 (La. 5/5/09), 9 So.3d 826, 832. Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Richard v. Hall, 2003-1488 (La. 4/23/04), 874 So.2d 131, 137.
We agree with the court of appeal that there are contested issues of material fact that make summary judgment inappropriate. Issues of the applicability of the immunity statute and potential comparative negligence of the parties remain.
Decree
|sThe ruling of the court of appeal is affirmed. The matter is remanded to the trial court for further proceedings.
AFFIRMED and REMANDED

. Knoll, J., retired, participated in this decision, which was argued prior to her retirement.

. While the concurrence mentions the possible applicability of La. R.S. 9:2795.3(A)(3)(e), it was not addressed by the majority opinion.

. Ms. Kramer provided two affidavits in support of Equest Farm's Motion for Summary Judgment. ' Attached to' her second affidavit were photos of the posted signs that instructed visitors not to touch or feed the horses.