ZACHARY MARCADE

VERSUS

NEW YORK MARINE AND GENERAL
INSURANCE COMPANY AND
NOLA MOTOR CLUB, L.L.C.

NO. 23-CA-17

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 807-130, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING

October 04, 2023

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and John J. Molaison, Jr.

**REVERSED; REMANDED**

 **MEJ**

 **FHW**

 **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
ZACHARY MARCADE
 Charles M. Thomas
 Leandro R. Area

COUNSEL FOR DEFENDANT/APPELLEE,
NEW YORK MARINE AND GENERAL INSURANCE COMPANY AND NOLA
MOTOR CLUB, L.L.C.
 Mark C. Dodart
 Stuart G. Richeson
 James H. Gilbert
 Harrison M. Martin

**JOHNSON, J.**

Appellant, Zachary[1] Marcade, seeks review of the 24th Judicial District Court's November 14, 2022 judgment granting the summary judgment filed by Defendants/Appellees', New York Marine and General Insurance Company and NOLA Motor Club, L.L.C.'s (collectively referred to as "NOLA Motor Club"), . Mr. Marcade sustained serious injuries to his left leg after a collision with a go-kart operated by his son's minor friend at NOLA Motor Club's kart track in Jefferson Parish. For the following reasons, we reverse the district court's judgment and remand the matter.

### FACTS AND PROCEDURAL HISTORY

Mr. Marcade and his wife celebrated the birthday of their 12 year old son, along with two of their son's minor friends, on August 9, 2019 at a party held at the NOLA Motorsports Park, operated by NOLA Motor Club, in Avondale, LA. The party of five participated in the first heat of a race without incident. During the second heat of the race, Kart #4, driven by one of their minor son's friends, who is referred to in the case record as "ST", spun out in front of Kart #14, the kart Mr. Marcade was driving. Mr. Marcade's kart collided into ST's kart at full speed, and Mr. Marcade was ejected from Kart #14 upon impact. According to a medical report completed by the NOLA Motor Club personnel in response to the accident, a medic placed Mr. Marcade's deformed left leg in a splint and noted that there were no other visible injuries. Thereafter, Mr. Marcade was released to the care of West Jefferson EMS for further treatment.

Before the group began the karting activity, Mr. Marcade's wife signed a Parental Consent, Release and Waiver of Liability, Assumption of Risk, and Indemnity Agreement form, and their son signed a Minor's Assumption of Risk

---

[1] Here, we use the same spelling of Appellant's first name as the case caption, although the record suggests it should be spelled "Zacharie".

and Release and Waiver of Liabilty, before a witness who was an employee of the track. The group also provided NOLA Motor Sports with forms that had been signed by ST and his father the day before the party. On the parental consent form, ST's father acknowledged:

> I know the nature of the EVENT(S) and the Minor's experience and capabilities, and believe the Minor to be qualified to participate in the Event(s). I will inspect the premises, facilities, and equipment to be used, or with which the Minor may come in contact. IF I OR THE MINOR BELIEVE ANTYTHING IS UNSAFE, I WILL INSTRUCT THE MINOR TO IMMEDIATELY LEAVE THE RESTRICTED AREA AND REFUSE TO PARTICIPATE FURTHER IN THE EVENT(S).

Through signing the forms, the adults also acknowledged the inherent danger and risk of harm karting poses, and NOLA Motorsports Park's immunity from liability pursuant to La. R.S. 9:2795.4.

On June 5, 2020, Mr. Marcade filed a Petition for Damages against NOLA Motor Club. Mr. Marcade alleged that he "has suffered physical pain and suffering, mental anguish, medical expenses, permanent disability, and disfigurement among other damages" as a result of the accident that "was caused solely and proximately by the negligence of NOLA Motor Club." NOLA Motor Club filed a Motion for Summary Judgment on May 5, 2022. In its motion, Appellees alleged that karting was a "motorized off-road vehicle activity" as contemplated by La. R.S. 9:2795.4, claimed that they met all of the statute's requirements, and asserted the immunity provided by the statute. NOLA Motor Club further argued that Mr. Marcade could not claim the exception to immunity provided by La. R.S. 9:2795.4(C)(2) because the statute required activity sponsors to make "reasonable and prudent efforts to determine the ability of the participant [claiming the exception] to engage safely" in the activity, and not the other participants partaking in the activity. Mr. Marcade timely filed an opposition, arguing that the collision was caused by a twelve-year-old child and NOLA Motor Club violated its own safety policy in allowing a child

under the age of fifteen to operate a SR kart unless the parent confirmed the minor had prior karting experience; that NOLA Motor Club's failure to make reasonable and prudent efforts to determine the participant's ability to kart safely and their failure to make sure ST had prior karting experience "constituted willful or wanton disregard for the safety of the participant" pursuant to La. R.S. 9:2795.4(C)(2) did in fact apply in this case; NOLA Motor Club had to prove immunity; NOLA Motor Club's conduct triggered two of the exceptions to immunity under the statute; and whether NOLA Motor Club confirmed that ST had prior karting experience was a genuine issue of material fact in dispute. In the alternative, Mr. Marcade also argued that La. R.S. 9:2795.4(C)(2) was unconstitutionally vague, and indefinite.

The district court held a hearing on the motion for summary judgment on October 25, 2022 and granted judgment in favor of NOLA Motor Club at the end of the hearing. The court found: 1) that NOLA Motor Club met the threshold of invoking the immunity statute's protection; 2) the waiver executed by ST's parent would satisfy the statute's requirements such that any exception under Subsection B would not apply; 3) the father's certification of ST's ability to participate in the activity was the "best discharge" of NOLA Motor Club's obligation to ensure that participants could safely engage in karting; 4) that, because ST's father acknowledged that he knew that the child was going karting, knew the nature of karting, and determined that his child could safely participate, it was not NOLA Motor Club's responsibility to second guess the parent's assessment, so (C)(2) did not apply; 5) the disclosure and waiver executed by ST's parent made resolution of the statutory construction question regarding who was a participant under La. R.S. 9:2794.4(C)(2) unnecessary; and 6) verifying that the parent knew about the SR kart safety policy was good practice, but not necessary to discharge any obligation that could be found under Subsection (C)(4), again because the parent certified that the child was capable of participating in the activity. The court also ruled that the

constitutionality of the statute was not properly before the court because the petition was not served upon the Attorney General.

This timely appeal followed.

## *ASSIGNMENTS OF ERROR*

Appellant assigns the following as error:

**(1)** The district court committed reversible error in granting the *Motion for Summary Judgment* because there was contradictory evidence that established genuine issues of material fact listed as such by NOLA Motor Club.

**(2)** The district court was not allowed to judge the facts or weigh the evidence at the hearing of the *Motion* but did so when it disregarded key testimony and inserted language into the parental consent form.

**(3)** The district court similarly erred when it found that the parental consent form outweighed the evidence of NOLA Motor Club's willful and wanton disregard for its safety policy.

Plaintiff's opposition to summary judgment and appeal argue that two of the exceptions to the immunity provided by La. R.S. 9:2795.4 are triggered by the facts in this case. Plaintiff argues that NOLA Motor Club failed to make reasonable and prudent efforts to determine the ability of the participant, ST, to engage safely in the motorized off-road vehicle activity. Plaintiff also argues that NOLA Motor Sports' failure to follow its own policy of requiring drivers of the SR karts to be at least fifteen years old or to have prior karting experience was an act or omission that constituted willful or wanton disregard for the safety of the participant Mr. Marcade, and that act or omission caused his injury. To support that argument, Plaintiff highlighted the fact that ninety-six accidents at NOLA Motor Club were caused by children between the ages of eight to fifteen in the five years preceding the accident. Last, Mr. Marcade takes exception with Defendant's interpretation of "participant" under La. R.S. 9:2795.4 as anything other than a "negligent kart operator" and contends that "[a]ny other reading of the law would lead to an absurd consequence."

Defendants/Appellees argue that the district court correctly found that NOLA Motor Club satisfied the requirements of La. R.S. 9:2795.4 (C)(2) to make reasonable and prudent efforts to determine the ability of ST to safely engage in karting by obtaining a parental consent form from ST's father indicating that ST's father was aware of the activities in which his son would be participating and that he believed his son was qualified to participate.

Alternatively, even if NOLA Motor Club's reliance on the Parental Consent Form signed by ST's father was not reasonable and prudent, Defendants argue that La. R.S. 9:2795.4 does not require NOLA Motor Club, as a motorized off-road vehicle activity sponsor, to make efforts to determine the ability of the other participants, such as ST, to safely engage in the activity, but rather requires the activity sponsor to make reasonable and prudent efforts to determine the ability of "the [injured] participant", Mr. Marcade, to participate in the activity.

NOLA Motor Club also contends that the district court correctly found that Plaintiff did not meet his burden to prove that an exception to immunity may apply, considering the facts of the case, and did not create a genuine issue of material fact as to whether NOLA Motor Club "[c]ommitted an act or omission that constitutes willful or wanton disregard for the safety of the participant, and that act or commission caused the injury."

### LAW AND DISCUSSION

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Caminita for & on Behalf of Caminita v. Roman Catholic Church of Archdiocese of New Orleans*, 20-54 (La. App. 5 Cir. 7/8/20), 299 So.3d 1269, 1271, *citing Stogner v. Ochsner Clinic Foundation*, 18-96 (La. App. 5 Cir. 9/19/18), 254 So.3d 1254, 1257. Summary judgment shall be granted "if the motion, memorandum, and supporting documents show that there is no genuine

issue as to material fact and that the mover is entitled to judgment as a matter of law." *Id.*

> In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Id.* at 765–66.
>
> On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. *See* La. C.C.P. art. 966(D)(1); *see also Schultz v. Guoth*, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006.
>
> When a motion for summary judgment is made and supported as provided in La. C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in La. C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B); *see also Dejoie v. Medley*, 2008-2223 (La. 5/5/09), 9 So.3d 826, 832.
>
> Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case.

*Larson v. XYZ Ins. Co.*, 16-0745 (La. 5/3/17), 226 So.3d 412, 417. The party

seeking immunity pursuant to statute, here NOLA Motor Club, also bears the

burden of proving that the statutory immunity in question applies to the particular

set of facts currently at issue. *Tebault v. E. Jefferson Gen. Hosp.*, 18-539 (La. App.

5 Cir. 3/25/19), 2019 WL 1339471 at *2, *writ denied,* 19-641 (La. 6/17/19), 273

So.3d 1211. As a general rule, statutes granting immunities or advantages to a

special class in derogation of the general rights available to tort victims must be

strictly construed against limiting the tort claimants' rights against the wrongdoer.

*Id.*

Recreational Use Statutes are in derogation of common or natural rights and, therefore, are to be strictly interpreted, and must not be extended beyond their obvious meaning. *Richard v. Louisiana Newpack Shrimp Co., Inc.*, 11-309 (La. App. 5 Cir. 12/28/11), 82 So.3d 541, 546. La. R.S. 9:2795.4, titled "Limitation of liability; motorized off-road vehicle activities; definitions; exceptions; required warning" provides, in pertinent part:

A. As used in this Section, the following terms shall have the following meanings, unless the context requires otherwise:

(1) "Engages in motorized off-road vehicle activity" means rides or drives, or is a passenger upon a motorized off-road vehicle, or is a person assisting a participant or management. The term "engages in a motorized off-road vehicle activity" does not include being a spectator at a motorized off-road vehicle activity, except in cases where the spectator places himself in an unauthorized area and in immediate proximity to the motorized off-road vehicle activity.

(2) "Inherent risks of motorized off-road vehicle activities" means those dangers or conditions which are an integral part of a motorized off-road vehicle activity, including but not limited to:
[. . .]
(c) Collisions with other motorized off-road vehicles or objects.

(d) The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the motorized off-road vehicle or not acting within his ability.
[. . .]
(4) "Motorized off-road vehicle activity" includes any or all of the following:
(a) A motorized off-road vehicle show, race, competition, or performance that involves any or all motorized off-road vehicles, including but not limited to any dirt track, paved or unpaved race course, or jump.
[. . .]
(c) Driving, inspecting, or evaluating a motorized off-road vehicle belonging to another, whether or not the owner has received some monetary consideration or other

thing of value for the use of the motorized off-road vehicle at a motorized off-road vehicle facility.

[. . .]

(8) "Participant" means any person, whether amateur or professional, who engages in a motorized off-road vehicle activity, whether or not a fee is paid to participate in the motorized off-road vehicle activity.

B. Except as provided in Subsection C of this Section, a motorized off-road vehicle activity sponsor, a motorized off-road vehicle professional, or any other person, which shall include individuals and all forms of business entities, shall not be liable for an injury to or the death of a participant resulting from the inherent risks of a motorized off- road vehicle activity and, except as provided in Subsection C of this Section, no participant or participant's representative shall make any claim against, maintain an action against, or recover from, a motorized off-road vehicle activity sponsor, a motorized off-road vehicle professional, or any other person for injury, loss, damage, or death of the participant resulting from any of the inherent risks of motorized off-road vehicle activities.

C. Nothing in Subsection B of this Section shall prevent or limit the liability of a motorized off-road vehicle activity sponsor, a motorized off-road vehicle professional, or any other person if the motorized off-road vehicle activity sponsor, motorized off-road vehicle professional, or other person either:

[. . .]

(2) Failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the motorized off- road vehicle activity.

[. . .]

(4) Committed an act or omission that constitutes willful or wanton disregard for the safety of the participant, and that act or omission caused the injury.

[. . .]

In the past, we have endorsed the third circuit's explanation of "willful" and "wanton."

The terms 'willful', 'wanton', and 'reckless' have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. The usual meaning assigned to do [sic] the terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a

willingness that harm should follow. *See Prosser,* Law of Torts, Section 34, at pages 187-189 (od Ed.1964).

*Adams v. Marathon Oil Co.*, 96-693 (La. App. 5 Cir. 1/15/97), 688 So.2d 75 *citing*

*Cates v. Beauregard Elec. Coop.,* 316 So.2d 907, 916 (La. App. 3rd Cir. 1975),

*aff'd* 328 So.2d 367 (La. 1976), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d

98 (1976). A plaintiff must prove the misconduct:

> was committed with the state of mind that [defendant] knew the public safety was at risk or should have known that it was highly probable that harm to the public would follow as a consequence of its derelictions. In other words plaintiff must show that [defendant's] alleged acts and omissions of negligence were accompanied by a conscious indifference to consequences amounting almost to a willingness that harm to the public safety would follow.

*Adams*, *supra*, *citing Griffin v. Tenneco Oil Company,* 531 So.2d 498 (La. App. 4th Cir. 1988).

> The limitation of liability of motorized off-road vehicle activities was constructed from the limitation of liability of equine activity, which was first enacted in 1999 under La. Rev. Stat. § 9:2795.1 (1999). The current limitation of liability of equine activity is found under La. Rev. Stat. § 9:2795.3. With almost identical language to limitation of liability of equine activity, limitation of liability of motorized off-road vehicle activities was first enacted in 2003 as La. Rev. Stat. § 9:2795.3 (2003), but moved to La. Rev. Stat. § 9:2795.4 in 2004. Due to the similarity of the language, and because there seem to be no reported state or federal cases applying La. Rev. Stat. § 9:2795.4, this Court looks to the limitation of liability of equine activity as stated in La. Rev. Stat. § 9:2795.3 to interpret the terminology found in La. Rev. Stat. § 9:2795.4.

*Tillman v. John Deere Constr. & Forestry Co.*, 21-2331, 2022 WL 1403356, at *4 (E.D. La. May 4, 2022), n.3.

Upon review of the record, we find that there is a genuine issue of material fact regarding whether NOLA Motor Club's failure to enforce their safety policy regarding verification that prospective SR kart operators under the age of 15 have had previous karting experience was an act or omission that constitutes wanton or willful disregard for the safety of the participant, or whether NOLA Motor Club made reasonable and prudent efforts to ensure that participants could safely engage

in the sponsored activity. Looking to the equine activity statute as the court in *Tillman*, *supra* did, there are at least two cases that suggest that the equine activity's sponsor's alleged failure to mitigate a horse's pattern of unsafe behavior could potentially be found to be an act or omission that constitutes wanton or willful disregard for the safety of the participant.

In *Faul v. Trahan*, 98-488 (La. App. 3 Cir. 10/7/98), 718 So.2d 1081, 1089, a farm employee sustained injuries when a horse "flipped" onto him as he began exercising it. At trial, several witnesses testified and there were conflicts in the evidence adduced at trial regarding whether the equine activity sponsors knew that the horse was a "flipper" or "had dangerous tendencies." *Id.* The Third Circuit opined that, in order to prove the liability of the defendants under the Equine Immunity Statute, the plaintiff had to show that they "acted with a reckless disregard for the consequences of their actions in the face of a known or obvious risk." *Id.* at 1088-1089. Further, because the trial court's findings in those regards were factual in nature and would not be disturbed in the absence of manifest error, the appellate court affirmed the district court's conclusion that neither the horse's trainer nor owner "acted with a reckless disregard for the consequences of their actions in the face of a known or obvious risk." *Id.*

In *Larson*, 226 So.3d at 418, the plaintiff, Danielle Larson, filed suit after her thumb was bitten off by a pony she was feeding at a horse farm. Larson testified in her deposition that she asked for permission to visit with the horses at the farm office. The office employee told her she could return with certain treats, and feed and visit with the school horses. *Id.* at 414. On her way to feed the horses, two riders advised her to be careful because they heard one of the school ponies had bitten a child. *Id.* Afterwards, when she went to feed one of the ponies a carrot, the pony knocked the carrot from her hand onto the floor and bit her thumb when they both attempted to retrieve the carrot from the floor. *Id.* The farm moved for

summary judgment and argued that Larson's suit should be dismissed because of the applicability of the Equine Immunity Statute. *Id.* at 415. The trial court granted summary judgment in favor of the defendants. The court of appeal reversed summary judgment, finding that "Larson was not a participant engaged in equine activity, and thus [the farm] was not afforded immunity under the statute." *Id.* The court of appeal's majority opinion also opined that even if Larson was a spectator as defined by the statute, the statute may still "provide immunity for the farm if Larson placed herself in an unauthorized area," but found that there were genuine issues of material fact on that issue that barred summary judgment. *Id.* The Supreme Court agreed with the court of appeal regarding the "contested issues of material fact that make summary judgment inappropriate." *Id.* at 417. In his concurrence, Justice Weimer noted:

> La. R.S. 9:2795.3(C)(2) provides an exemption from statutory immunity for the failure of an equine activity sponsor, equine professional, or any other person to "make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity *and to safely manage the particular equine* based on the participant's representations of his ability." La. R.S. 9:2795.3(C)(2) (emphasis added).

*Id.*

By analogy, to determine whether NOLA Motor Club's conduct may have triggered exceptions to the immunity provided by La. R.S. 9:2795.4, we must perform the same analysis that the *Faul* and *Larson* courts undertook with regards to the Equine Immunity Statute. This Court must consider NOLA Motor Club's knowledge of the particular risk(s) faced by the plaintiff, and whether, in response to those risk(s), the precautions it took were reasonable and prudent, and/or its acts or omissions constituted wanton and willful disregard for the participant's safety. In the case *sub judice*, despite several accidents being caused by minors under the age of fifteen operating karts, there is evidence that NOLA Motor Sports did not advise participants or their parents of the dangers of minors under the age of fifteen

operating the SR karts in particular, or enforce its safety policy and verify that kart operators under the age of fifteen had previous karting experience. NOLA Motor Club admitted that neither the consent forms nor their employees verify that minors under the age of fifteen have previous karting experience before allowing them to operate the faster SR karts.

Factual findings are required to determine whether the general disclosure (given by the parental consent forms) of the inherent danger and risk karting posed was adequate; whether NOLA Motor Club "acted with a reckless disregard for the consequences of their actions in the face of a known or obvious risk" by failing to verify the SR kart operators under the age of 15 had prior karting experience (or to, at least, notify participants' parents of that particular risk); and whether NOLA's acts or omissions constituted "willful or wanton disregard for the safety of the participant.". *See Faul*, *supra*. Subjective facts call for credibility evaluations and the weighing of testimony and summary judgment is inappropriate for such determinations. *Read v. Willwoods Cmty.*, 11-222 (La. App. 5 Cir. 2/14/12), 88 So.3d 534, 538, *writ denied,* 12-616 (La. 4/27/12), 86 So.3d 629. In determining whether an issue is genuine for purposes of a summary judgment, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. *Id.*

Last, we find that that the use of "participant" in La. R.S. 9:2795.4(C)(2) applies to both Mr. Marcade and ST. "Participant" is defined by the statute as "***any person***, whether amateur or professional, who engages in a motorized off-road vehicle activity, whether or not a fee is paid to participate in the motorized off-road vehicle activity." (Emphasis added). Further, the activity sponsor's duty to "make reasonable and prudent efforts to determine the ability of the participant to engage safely in the motorized off-road vehicle activity" must necessarily encompass

making reasonable and prudent efforts to determine the ability of the other participants to safely engage in the motorized off-road vehicle activity also.

### *DECREE*

Based on the foregoing, the district court ruling granting summary judgment to NOLA Motor Club and New York Marine and General Insurance Company is reversed. The matter is remanded for further proceedings.

**REVERSED; REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



## FIFTH CIRCUIT
101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 4, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-CA-17

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
CHARLES M. THOMAS (APPELLANT)        LEANDRO R. AREA (APPELLANT)        STEPHEN M. HUBER (APPELLANT)
JAMES H. GILBERT (APPELLEE)          MARK C. DODART (APPELLEE)

**MAILED**
HARRISON M. MARTIN (APPELLEE)
STUART G. RICHESON (APPELLEE)
ATTORNEYS AT LAW
365 CANAL STREET
SUITE 2000
NEW ORLEANS, LA 70130