# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #026

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **3rd day of May, 2017**, are as follows:

**BY HUGHES, J.**:

2016-C-0745      DANIELLE LARSON v. XYZ INSURANCE COMPANY, ET AL. (Parish of Orleans)

Knoll, J., retired, participated in this decision, which was argued prior to her retirement.

The ruling of the court of appeal is affirmed. The matter is remanded to the trial court for further proceedings. AFFIRMED AND REMANDED.

WEIMER, J., concurs in the result only and assigns reasons.
GUIDRY, J., concurs and assigns reasons.
CRICHTON, J., concurs for reasons assigned by Justice Guidry.

03/03/2017

SUPREME COURT OF LOUISIANA

No. 2016-C-0745

DANIELLE LARSON

VERSUS

XYZ INSURANCE COMPANY, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS

HUGHES, J.[1]

We granted the writ application in this case to review the applicability of La. R.S. 9:2795.3, the Equine Immunity Statute. The trial court granted a motion for summary judgment filed by Equest Farm, LLC, finding that the immunity statute applied because plaintiff Danielle Larson was a participant engaged in equine activity at the time the Equest Farm pony bit her. The court of appeal reversed, holding that Larson was not a "participant" under the immunity statute, and that summary judgment was inappropriate because there were genuine issues of material fact as to whether another provision in the immunity statute might apply. We hold that there are genuine issues of material fact on the issue of whether the immunity statute applies. Accordingly, we affirm the court of appeal and remand to the trial court.

**Facts**

This suit concerns a horse bite injury sustained in 2013 by Danielle Larson, who visited Equest Farm for the purpose of visiting and feeding horses owned by that facility. Equest Farm is located in City Park in New Orleans, and it boards horses as well as offers camps, lessons, field trips, and birthday parties with horses.

_____

[1] Knoll, J., retired, participated in this decision, which was argued prior to her retirement.

Larson, an Illinois resident, frequently came to the New Orleans area to visit her boyfriend. Larson testified that she has never owned a horse but that she had been riding horses since childhood and she rode horses at a stable in Illinois. Larson testified that she had previously been shown how to feed a horse: with a flat hand, fingers together so that they are angled down and not sticking up. Larson testified that in the past she had fed horses common treats such as carrots, apples, and sugar cubes.

Larson testified in her deposition that she had been visiting Equest Farm since 2011 or 2012 to "talk to them" and "give them love and affection." Larson testified that prior to the incident she had visited Equest Farm at least six times and that she tried to go every time she visited New Orleans. Larson testified that each time she went to Equest Farm for a visit she would first check in with someone from the equestrian center front office before heading into the stables. Larson testified that during a previous visit, a man who appeared to work for Equest Farm gave her mints to feed the horses. Approximately five days before the date of the accident, Larson dropped by Equest Farm to ask if in the coming days she could visit with the school horses, which are horses owned by facility used for lessons. She also wanted to return with treats and was seeking advice on what the horses liked. Larson said she spoke with someone who worked in the office, named Kaley or Kiley, who told her she could return with certain treats, including carrots, and feed and visit with the school horses.

When Larson returned with carrots on Monday, September 23, 2013, the Equest Farm office was closed in accordance with its regular schedule, and Larson proceeded to the stalls where the school horses were kept. On her way, she encountered two riders who boarded horses at Equest Farm, Joanna Deal and

Susan Gegenheimer. Larson told them that she was going to feed the school horses carrots. Ms. Deal and Ms. Gegenheimer told Larson to be careful because they heard one of the school ponies had bitten a child.

As Larson was visiting with the school horses, she arrived at a stall where a pony, Wesley, was standing at the gate. Larson placed a carrot in her hand and held it out, but the carrot was knocked from her hand by the horse, causing the carrot to fall to the ground. As Larson squatted down to pick up the carrot, Wesley also reached for the carrot. Instead of biting the carrot, however, Wesley bit off Larson's thumb.

Larson required substantial medical care. Doctors attached her injured hand to her groin for four weeks to keep what remained of her hand viable. Larson will have to be fitted for a prosthetic thumb or transfer a toe to her hand.

There is a dispute about the signage that was posted on the day of the incident. Larson testified that she did not see any signs at Equest Farm prohibiting visitors from feeding the horses. Ms. Deal also testified that on the day of the accident she did not recall any such signs, but that she did not go into the school horse barn often. Ms. Gegenheimer also testified that at the time of the accident she was not aware of any rules that would prevent visitors from feeding the horses. Ms. Gegenheimer further testified that she did not see any signage specifically warning others about a prior nipping incident involving Wesley. Equest Farm LLC, member Leslie Kramer averred by affidavit that there have been signs posted since 2011 that feeding treats or petting horses is not allowed. She averred that the signs stated visitors could "look but not touch" the horses.

As for Wesley, he appears to have a good reputation at Equest Farm, although it is not without blemish. Ms. Deal testified that she saw small children

3

ride on Wesley. Ms. Gegenheimer testified he was a "great lesson horse." Ms. Kramer averred that Wesley "is considered to be one of Equest Farm's best school ponies." Ms. Kramer also averred that the only other time Wesley has bitten anyone was when a child who had been riding him was holding his ears and muzzle trying to get him to kiss her. Wesley nipped her and bruised her cheek, however, the student continued to take lessons riding Wesley, and no lawsuit was filed.

**Procedural History**

Larson filed a Petition for Damages alleging that Equest Farm and its insurer were liable for her injuries under theories of negligence and strict liability. Equest Farm filed a Motion for Summary Judgment, which argued that Larson's suit should be dismissed due to the applicability of the Equine Immunity Statute, La. R.S. 9:2795.3. Equest Farm asserted that Larson was a "participant" who was injured as a result of inherent risks of equine activity, and under the Equine Immunity Statute, the facts of her case preclude her from recovery against Equest Farm.

The trial court granted Equest Farm's Motion for Summary Judgment, dismissing Larson's suit. In reasons given from the bench, the trial court found:

> I believe that when you went and touched – when you touched that horse, when you went to feed that horse it was equine activity. You're not a spectator and it could be – somebody could say that it's inspecting. I don't know. Evaluating, I don't know. But I don't know what that means. I do know horses and I know that you feed a horse like this (Indicating), and I know if you drop that carrot a horse takes his tongue and he felt the finger and feels like a carrot, and he bites it.
> Now, again, you're saying maybe that's comparative fault, whatever. That's not a dangerous animal. I mean, that's not – he didn't do anything negligent. He did what a horse does. That's all you get . . . .
> And just the way he looks, his eyes are way up here, his mouth is way down here. I mean, we own horses. And it's ugly. That picture that was submitted to us is absolutely ugly . . . .

4

I think the Fourth Circuit needs to look at it. The [F]ourth Circuit needs to tell me it was equine activity. I do. I think they need to tell me that. Because I do think she took herself out of a spectator position. Had she stayed behind and the horse came over and bit her, I'm with you. But when you go and put yourself in the middle of it, and you knew horses -- what your client says, she loves horses, she knows them, she does that. I just don't know. I think the definition -- you know maybe you're right but somebody might say that's inspecting, that's evaluating. I don't know. But I think you need to let the Fourth Circuit tell you that I'm wrong. So I'm granting your Summary Judgment.

Larson appealed. The court of appeal reversed the summary judgment, finding that Larson was not a participant engaged in equine activity, and thus Equest Farm was not afforded immunity under the statute. *Larson v. XYZ Ins.*, 2015-0704 (La. App. 4 Cir. 3/23/16), 192 So.3d 181. The appeal court concluded that the definition of "engages in equine activity" found in subsection (A)(1) of the statute, which must be strictly construed, does not include "a visitor to a stable who feeds treats to a horse." *Id*. at p. 10, 187. The court noted that the definitions of "equine activity" listed in subsection (A)(3) are to be considered in determining whether someone is a participant. *Id*. at p. 12, 189. However, the court of appeal determined that Larson was not "inspecting" or "evaluating" under subsection (A)(3)(d). *Id*. Larson's visit to see the horses and give them "love and affection" does not meet the dictionary definitions of inspect or evaluate, and dictionary definitions are to be used because the statute does not define these terms. *Id*. Thus, the court of appeal concluded that Larson was not a participant under the Equine Immunity Statute.

The majority[2] also opined that even if Larson was a "spectator" pursuant to Subsection (A)(1), the statute could still provide Equest Farm with immunity if Larson, as a spectator, placed herself in an unauthorized area. *Id*. at p. 13, 189. The

---

[2] While the concurrence mentions the possible applicability of La. R.S. 9:2795.3(A)(3)(e), it was not addressed by the majority opinion.

court of appeal found that there were genuine issues of material fact on this issue that bar summary judgment. Specifically, Larson and the two riders testified that they could not recall seeing signs that prohibited touching or feeding the horses. *Id*. at pp. 14-15, 190. But according to an affidavit of Ms. Kramer[3], such signs were posted. *Id*. at p. 15, 190. The court of appeal stated that whether Equest Farm is entitled to immunity under La. R.S. 9:2795.3 at this juncture should be decided by a trier of fact. *Id*. The court of appeal thus reversed the grant of summary judgment and remanded to the trial court for further proceedings. *Id*.

Equest Farm filed an application for certiorari, which this court granted. *Larson v. XYZ Ins. Co.*, 2016-0745 (La. 6/28/16), 192 So.3d 782.

**Law and Analysis**

Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. *Greemon v. City of Bossier City*, 2010-2828 (La. 7/1/11), 65 So.3d 1263, 1267; *Samaha v. Rau*, 2007-1726 (La.2/26/08), 977 So.2d 880, 882; *Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority*, 2002-1072 (La. 4/9/03), 842 So.2d 373, 377. In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one

---

[3] Ms. Kramer provided two affidavits in support of Equest Farm's Motion for Summary Judgment. Attached to her second affidavit were photos of the posted signs that instructed visitors not to touch or feed the horses.

conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Id*. at 765-66.

On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. *See* La. C.C.P. art. 966(D)(1); s*ee also Schultz v. Guoth*, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006.

When a motion for summary judgment is made and supported as provided in La. C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in La. C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B); *see also Dejoie v. Medley*, 2008-2223 (La.5/5/09), 9 So.3d 826, 832. Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Richard v. Hall*, 2003-1488 (La. 4/23/04), 874 So.2d 131, 137.

We agree with the court of appeal that there are contested issues of material fact that make summary judgment inappropriate. Issues of the applicability of the immunity statute and potential comparative negligence of the parties remain.

**Decree**

The ruling of the court of appeal is affirmed. The matter is remanded to the trial court for further proceedings.

**AFFIRMED and REMANDED**

05/03/2017

# SUPREME COURT OF LOUISIANA

## NO. 2016-C-0745

## DANIELLE LARSON

## VERSUS

## XYZ INSURANCE COMPANY, ET AL.

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FOURTH CIRCUIT, PARISH OF ORLEANS*

**WEIMER, J.**, concurring in the result only.

I respectfully concur. As the majority acknowledges, this court granted writs "to review the applicability of La. R.S. 9:2795.3, the Equine Immunity Statute." **Larson v. XYZ Ins. Co.**, 16-745, slip op. at 1 (La. __/__/17). Nevertheless, and without any discussion or analysis of the statute, the decision of the court of appeal is rather summarily affirmed, on the basis that there are genuine issues of material fact which make summary judgment inappropriate. The case is remanded, but not before the majority points out that "[i]ssues of the applicability of the immunity statute and potential comparative negligence of the parties remain." **Id.** at 8.

Because we granted the writ for the specific purpose of reviewing the applicability of the immunity statute, I believe analysis of the statute insofar as the undisputed facts are concerned is appropriate in order to provide some guidance on the law to the parties on remand. At least one of my colleagues is in agreement on this point, as he has authored a concurring opinion in which he offers his own view of the immunity statute under "the evidence presented thus far." **Id.** at 1(Guidry J., concurs and assigns reasons).

I write separately to emphasize that this concurrence is but one Justice's view of the statute and, because it is only one Justice's view, it should not be given undue weight by the district court in its analysis on remand. If a concurring opinion represented the majority view, this case would have been resolved on that basis.

With all due respect to the concurring opinion, I believe a different analysis is merited. While I do no suggest that my analysis represents the prevailing view, I offer it by way of demonstrating the difficulty faced by the district court on remand in interpreting La. R.S. 9:2795.3 without definitive guidance from this court.

What our rules of statutory construction teach us is that the fundamental question in all cases of statutory interpretation is legislative intent, and we begin our search for that intent with the language of the statute. **Moss v. State**, 05-1963, p. 15 (La. 4/4/06), 925 So.2d 1185,1196; see also, **Connecticut Nat. Bank v. Germain**, 503 U.S. 249, 253-54(1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). In this case, even a cursory examination of the language of La. R.S. 9:2795.3 reveals that the legislature has extended immunity to some, but not all, activities involving equines. This is evidenced by the reality that, while there are many facts surrounding the accident that remain in dispute, it is undisputed that the activity in which the plaintiff was engaged–petting the horses and feeding them treats–is not among the activities specifically enumerated in the statute as falling within the definitions of "engages in an equine activity" or of "equine activity."

The concurring opinion attempts to remedy this omission through an expansive reading of La. R.S. 9:2795.3(A)(3)(e), which defines an "equine activity" as "[a] ride, trip, hunt, or other equine activity of any type however informal or impromptu that are sponsored by an equine activity sponsor." However, the language of this

2

provision does not allow for its interpretation as the non-exhaustive list of illustrative activities the concurring opinion would read it as. Rather, the "equine activity" must be "sponsored by an equine activity sponsor." Moreover, the phrase "or other equine activity of any type however informal or impromptu" is preceded by the qualifying phrase "[a] ride, trip, hunt." Petting, talking to and giving treats to horses hardly falls within the universe of activities relating to a ride, trip or hunt–the activities addressed in this subsection. Finally, and most significantly, the "equine activity" referenced in this subsection is itself a defined term, the definition being contained in La. R.S. 9:2795.3(A)(3)(a)-(f). Clearly, had the legislature intended to confer a broad, all-encompassing immunity, it could have done so very simply by extending immunity to all "equine activity," without adding the extensive and detailed definitional language in the statute delineating what activity constitutes "equine activity" and what "engages in an equine activity" means. La. R.S. 9:2795.3(A)(1) and (3). The fact that the legislature did not choose that path is telling.

In crafting La. R.S. 9:2795.3, the legislature has gone to great lengths to delineate exactly what conduct is encompassed within the grant of statutory immunity. Petting and talking to horses, as well as feeding them treats, is not conduct that is delineated in the statute as being subject to the grant of immunity. Thus, consistent with the long-settled rule that statutes in derogation of common law or natural rights must be strictly construed,[1] I must, for the reasons cited above, respectfully disagree with the statutory analysis of my esteemed colleague.

Finally, and insofar as the majority opinion is concerned, I would note that La. R.S. 9:2795.3(C)(2) provides an exemption from statutory immunity for the failure

---

[1] See, **Monteville v. Terrebonne Parish Consol. Government**, 567 So.2d 1097, 1100-1101 (La. 1990) (and cases cited therein).

of an equine activity sponsor, equine professional, or any other person to "make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity *and to safely manage the particular equine* based on the participant's representations of his ability." La. R.S. 9:2795.3(C)(2) (emphasis added). In the present case, there is testimony that the school pony, Wesley, had previously bitten a child, creating a factual dispute as to whether the horse had a known history of biting. There is also disputed testimony as to whether signs had been posted warning people not to feed the horses. Given the existence of these disputed issues of material fact, I concur in the majority's decision to affirm the decision of the court of appeal and remand this matter to the district court.

SUPREME COURT OF LOUISIANA

No. 2016-C-0745

DANIELLE LARSON

VERSUS

XYZ INSURANCE COMPANY, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS

**GUIDRY, Justice, concurs and assigns reasons.**

I concur in the majority's holding that summary judgment was not warranted at this juncture of the proceedings and that a remand for trial is necessary in this case, because there remain genuine issues of material fact on the issue of whether the Equine Immunity Statute applies. *Infra*, p. 1. In reversing the trial court's grant of summary judgment, a majority of the court of appeal reasoned the plaintiff was a "spectator" rather than a "participant" within the meaning of the Equine Immunity Statute, a view contrary to the finding of the trial court, which had determined the plaintiff was a "participant" and granted summary judgment without considering other relevant portions of the immunity statute. The concurring judge in the court of appeal found there exist genuine issues of material fact as to whether the plaintiff was a "participant." In my view, the trial court was correct in finding the plaintiff to be a "participant" engaging in equine activity within the meaning of the statute. *See* La. R.S. 9:2795.3(A)(3)(e). Further, because the plaintiff asked for and was given permission by the defendant's employee to touch and feed the horses, according to her own deposition testimony, the existence of a sign prohibiting such would not preclude a finding that the equine activity in which the plaintiff was engaged had been sponsored by the defendant.

1

Notwithstanding my appreciation of the Equine Immunity Statute and the evidence presented thus far in regard to the motion for summary judgment, I respectfully concur in the holding of the court's opinion today, which simply affirms the "ruling" of the court of appeal reversing the trial court's grant of the defendant's motion for summary judgment, and remands the matter to the trial court for further proceedings. *Infra*, p. 8.

05/03/2017

SUPREME COURT OF LOUISIANA

No. 2016-C-0745

DANIELLE LARSON

VERSUS

XYZ INSURANCE COMPANY, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS

CRICHTON, J., concurs for the reasons assigned by Guidry, J.