STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-868


MARK WOODS AND IANTHA WOODS

VERSUS

MORRIS H. WEINSTEIN, L.L.C., ET AL.



**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 16-C-2564-D
HONORABLE D. JASON MECHE, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John E. Conery, and Van H. Kyzar, Judges.


REVERSED AND REMANDED.

**Charles M. Ponder, III**
**Ponder Law Firm**
**935 Gravier Street, Suite 835**
**New Orleans, Louisiana 70112**
**(504) 528-3066**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Morris H. Weinstein, L.L.C.**
    **J.T. Wein, Inc.**

**Geri Broussard Baloney**
**Broussard Baloney Law Firm, APC**
**3852 Napoleon Avenue**
**New Orleans, Louisiana 70125**
**(504) 535-2889**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Mark Woods**
    **Iantha Woods**

**CONERY, Judge.**

Plaintiffs Mark and Iantha Woods alleged physical injuries and property damage after their vehicle was struck by a metal object while travelling on the Interstate. Plaintiffs alleged in the petition that the metal object had not been properly secured to a tractor/trailer travelling ahead of them on the Interstate. The truck was being operated by Richard B. Soileau, an employee of J.T. Wein, Inc. and was under the control of Defendants, J.T. Wein, Inc. and Morris H. Weinstein, L.L.C. Plaintiffs alleged that the failure to secure the load permitted the metal object to dislodge from the tractor-trailer and strike Plaintiffs' vehicle. Defendants filed a motion for summary judgment, maintaining that the allegation of improper load securement was without basis in fact. Defendants also denied the existence of any genuine issues of material fact regarding liability under the principle of respondeat superior for the actions of the driver. The trial court entered summary judgment in favor of Defendants. Plaintiffs appeal. For the following reasons, we reverse the summary judgment and remand.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs, Mark and Iantha Woods of Lafayette, Louisiana allege that, on June 15, 2015, they were westbound on Interstate 10 in East Harris County, Texas, when their 2011 Mercedes GLK was "violently struck by a metal rod-like object[1] which pierced Plaintiffs' windshield." The plaintiffs explained that the incident occurred when an "18-wheeler … carrying a trailer filled with metal and steel rods … passed the plaintiffs' vehicle on the driver[']s-side" and their vehicle was struck by a "metal

---

[1] At the time of his deposition, Mr. Woods described the object as an angle-iron rather than a rod.

rod-like object[,]" causing property damage to their vehicle and personal injury to Plaintiffs.

Plaintiffs named the owner of the truck, J.T. Wein, Inc., and the owner of the trailer, Morris H. Weinstein, L.L.C., as defendants (collectively "Defendants") in the suit, filed in the Twenty-Seventh Judicial District, St. Landry Parish. Plaintiffs also named the "Unidentified Driver" and "fictitiously-named" ABC Insurance Company and XYZ Insurance Company as the respective insurers of Morris H. Weinstein, L.L.C. and J.T. Wein, Inc. Although the "Unidentified Driver" was identified in Defendants' Answer as Richard B. Soileau, an employee of J.T. Wein, Inc., the present record contains no further pleadings formally naming and serving Mr. Soileau or the insurers.

Plaintiffs alleged that the accident was caused due to Defendants' failure to "properly secure the rusty metal object/rod onto [their] truck/trailer, thereby permitting said metal object/rod to fly off Defendants['] vehicle and striking Plaintiffs' vehicle." Plaintiffs alleged that "[t]he actions of Defendants, driver, and his employers, J.T. Wein and [Morris Weinstein, L.L.C.] and the crash between the metal object/rod and Plaintiff['] vehicle, cause[d] Plaintiffs to bring their vehicle to a sudden and unexpected stop, resulting in Plaintiffs being jerked and thrown back and forth thereby causing incurred physical injuries."

Plaintiffs alleged that Mr. Soileau, as the then-unidentified driver, was liable for failing to act reasonably under the circumstances, including failing to inspect his tractor-trailer before departing his earlier location, failing to properly secure metal objects/rods loaded onto the tractor-trailer, failing to follow operating procedures and practices for inspection and securement of objects being carried by the tractor-

2

trailer, operating the vehicle without due care or in contravention of applicable state law, and in operating the vehicle in a generally careless and reckless manner.

Plaintiffs alleged that, in addition to their liability under the doctrine of vicarious liability and respondeat superior, Defendants were negligent in failing to properly instruct/train their employees, failing to properly supervise and monitor the "employee, driver," permitting the driver to operate the tractor-trailer without proper training or instruction and without undertaking reasonable measures related to inspection and securing of the load, negligently hiring the driver, failing to enact and promulgate proper rules and safety procedures, and in unnamed negligent acts. Plaintiffs alleged that all defendants were liable "jointly, severally and *in solido*." Plaintiffs further alleged that Defendants J.T. Wein, Inc. and Morris H. Weinstein were liable under La.Civ.Code arts. 2317 and 2317.1 given their "custody, garde, and/or ownership of the truck/trailer with unsecured load and materials[,]" which presented an unreasonable risk of harm resulting in the claimed damages and injuries.

J.T. Wein, Inc. and Morris H. Weinstein, L.L.C. jointly answered the petition, acknowledging J.T. Wein, Inc.'s ownership of the subject tractor and Morris H. Weinstein, L.L.C.'s ownership of the subject trailer. They further acknowledged that "the tractor-trailer under the dispatch of J.T. Wein, Inc. was in the custody, control, and operation of its employee." Noting that the "operator of the subject tractor-trailer" was, in fact, an employee of J.T. Wein, Inc., Defendants denied that any "aspect of the load was dislodged or lost at any time." They instead advanced the "reasonable and proper securement of the load in transit[.]" Defendants contended that the operator, Mr. Soileau, "properly inspected the load and performed a pre-trip inspection" of the tractor-trailer, properly secured the load, and thereafter followed proper procedure and practices in his securement of the load and operation

3

of the tractor-trailer. They further alleged that J.T. Wein, Inc. had properly hired, instructed, trained, and retained Mr. Soileau in the securement of any load transported by him and properly supervised and monitored his conduct. Defendants answered that "no aspect of the load in transit with Richard Soileau was dislodged, lost, or in any manner came in contact with the vehicle operated by plaintiffs." Defendants advanced numerous affirmative defenses and stated, in part, that "the alleged metal object at issue in this proceeding did not constitute or form any part of the cargo in transit with Richard Soileau." Instead, and although denying that the event occurred as alleged by plaintiffs, Defendants "aver[red] that the subject accident occurred because of the presence of a road hazard which Richard Soileau did not create and in the exercise of reasonable care could not avoid due to the presence of other motorists in, on, or about the other lanes of traffic upon the subject roadway."

In April 2019, Defendants J.T. Wein, Inc. and Morris H. Weinstein, L.L.C., filed a motion for summary judgment alleging an absence of genuine issues of material fact indicating that Mr. Soileau "breached any duty to plaintiffs, as a matter of law, or that he or his employer, J.T. Wein, Inc. are liable to plaintiff's [sic] on any basis." It further alleged that, as Mr. Soileau was neither a direct employee nor under the dispatch of Morris H. Weinstein, L.L.C. there was no basis for the latter's liability.

In support of their motion, Defendants attached, among other exhibits, Mr. Soileau's affidavit, whereby he explained his employment by J.T. Wein, Inc. and his operation of the tractor-trailer on June 15, 2015, as discussed below. By affidavit of Jeff Mitchell, J.T. Wein, Inc.'s Safety Director, Defendants represented that "J.T. Wein, Inc. leased the trailer in transit with Richard B. Soileau from Morris H.

4

Weinstein, L.L.C., Richard B. Soileau operated a tractor owned by J.T. Wein, Inc., and he was under dispatch from J.T. Wein, Inc. on June 15, 2015."

Defendants also attached an excerpt of Mr. Woods' deposition in which he described the accident, but denied actually seeing a piece of "angle iron" come off of the surface of the truck prior to it impacting his vehicle. In her own deposition, Mrs. Woods similarly explained that she did not see the origin of the metal piece.

In opposition, Plaintiffs highlighted their depositions, including those aspects of their deposition where they reviewed photographs of the purported load. Mr. Woods identified metal pieces in the photographs that looked like the "angle iron," on the trailer, whereas Mrs. Woods disputed that the "pipes" in the photographs were all like those on the trailer at the time of the accident.

Plaintiffs further attached Mr. Woods' affidavit wherein he explained that he and his wife were travelling in the same direction as Defendants' tractor trailer, which "was carrying a load of metal pipes."[2] Although the petition alleged that the tractor-trailer had passed Plaintiffs' vehicle prior to the incident, Mr. Woods explained in the affidavit that "he decided to get from behind the tractor-trailer and moved to lane 1.[3] At which time he saw a metal pipe, like the pipes that the tractor-trailer was transporting, flying through the air in a lance-like motion. The pipe was coming from the direction of the tractor-trailer."

---

[2] Although Plaintiffs' petition referenced a "metal object/rod" and Mr. Woods described an "angle iron" in his deposition, Mr. Woods described the object as pipe in his affidavit.

[3] The affidavit does not include Mr. Woods' description of "Lane 1." However, during his deposition, Mr. Woods explained that, at the location of the accident, Interstate 10, Westbound includes four lanes. For purposes of the deposition, they were identified as "1 being the rightmost as you proceed west, 2 being the one next to it, 3 being to the left and 4 being the leftmost lane[.]" Mr. Woods explained that he was traveling Lane 1, whereas the tractor-trailer was travelling in Lane 2. Both vehicles were westbound.

Following a hearing, the trial court granted Defendants' motion for summary judgment, concluding that Plaintiffs failed to demonstrate a genuine issue of material fact that the metal piece came off of the subject trailer or that, if the metal object was in the roadway, that the driver, Mr. Soileau, could not have avoided hitting that object, thus propelling it into Plaintiffs' vehicle. The trial court pointedly referenced the affidavit of the truck driver, Mr. Soileau, and determined that it eliminated "any inference that the metal object flew off of the Weinstein trailer" or that Mr. Soileau "could not avoid hitting the object with this trailer." The trial court determined that Mr. Soileau's affidavit offered "a *prima facie* showing that Soileau could not avoid the object" and, thus, the burden shifted to Plaintiffs "to come forth with facts either: (1) contradicting that the item came from the roadway instead of the trailer, or (2) contradicting Soileau's statement that he could not avoid striking the object in the roadway." The trial court concluded that they failed to do so.

Plaintiffs appeal, questioning:

1. Whether the trial court erred in granting summary judgment where the supporting and opposing documents reveal conflicting versions of the facts which may only be resolved by weighing contradictory testimony and assessing witness credibility.

2. Whether the trial court erred in granting Defendants' Motion for Summary Judgment because there exist genuine issues of material fact.

## LAW AND DISCUSSION

*Summary Judgment*

Louisiana Code of Civil Procedure Article 966 allows a party to seek summary judgment and provides that it "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art 966(A)(3).

The burden of proving entitlement to summary judgment "rests with the mover." La.Code Civ.P. art. 966(D)(1). In cases such as this, where the defendants would not be required to bear the burden of proof at trial, La.Code Civ.P. art. 966(D)(1) further provides:

> Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

A reviewing court considers a trial court's judgment on a motion for summary judgment pursuant to the de novo standard. *Larson v. XYZ Ins. Co.*, 16-745 (La. 5/3/17), 226 So.3d 412.

*Genuine Issues of Material Fact*

In their brief on appeal, Plaintiffs acknowledge Mr. Soileau's statement in his affidavit that he came across a piece of metal in the roadway that he was unable to avoid. His trailer struck the metal, causing it to become airborne. However, Plaintiffs note their own deposition testimony in which they challenged Defendants' representations of the trailer's load. This differing account, Plaintiffs contend, posed issues of credibility and required a fact finder to weigh the evidence and testimony which is inappropriate on consideration of a motion for summary judgment.

Defendants rely, in part, on Mr. Soileau's affidavit, wherein he states that he had been "dispatched by J.T. Wein, Inc. to pick up 13 pieces of 24″ pipe from Stupp

Corporation in Baton Rouge, Louisiana on Friday, June 12, 2015."[4] He explained that the "pipe was secured by nylon straps with and dunnage (wood boards) with wooden chocks affixed to the dunnage with nails, which was loaded by Stupp Corporation personnel." He stated that "No iron or steel angle irons were used to secure this load and none were present on the flat-bed trailer[,]" and that "he performed a pre-trip inspection of the tractor-trailer" and its load before travelling to his home in Mamou, Louisiana. Mr. Soileau stated that the "tractor-trailer was in good operation and mechanical condition and the load was secure." On June 15, 2015, the day of the accident, Mr. Soileau explained, he performed a pre-trip inspection of the tractor-trailer and its load before leaving Mamou "en route to Pipe and Tube Supplies, Inc. in Pearland, Texas[.]" He again described the tractor-trailer and its load as "in good operational and mechanical conditions and the load was secure."

While driving on Interstate 10, Mr. Soileau continued, he "encountered a piece of debris lying in the lane occupied by my tractor-trailer[,]" and that, although he avoided striking the debris with his truck, he admitted that he "could not avoid striking the debris with the tire or tires on the trailer." Mr. Soileau admitted he saw that debris in the roadway fly "upward from the road surface," but that he "could not

---

[4] Safety Director Mitchell's affidavit includes attachments of the "Uniform Motor Carrier Straight Bill of Lading," Exhibit B, and the shipper's "Straight Bill of Lading – Short Form," Exhibit C.

Exhibit B describes the delivery of "24″ pipe" from "Stupp" to "Pipe & Tube" of Pearland, Texas. Exhibit C lists delivery from "Stupp Corporation" as "shipper" to "Pipe and Tube Supplies, Inc. Pipe and Tube Supplies[,]" of Pearland, Texas, as consignor.

Mr. Mitchell's affidavit also included a dispatch sheet from the subject delivery as Exhibit A, which Mr. Mitchell referenced as "a true and authentic business of record of J.T. Wein, Inc." Titled "Codelite, Inc. Dispatch Sheet" the form references delivery as one from "Stupp Corporation" to "Pipe & Tube Supplies," with billing addressed to "Codelite, Inc." of Porter, TX. Codelite, Inc. is not otherwise identified in the record.

see what happened to this debris because I could not follow the debris once this left my vision in my side tractor mirrors."

Finally, Mr. Soileau explained that upon delivery of his load in Pearland, Texas on June 15, 2015, "all 13 pieces of the 24″ pipe were accounted for as was the securement of nylon straps with dunnage; and there was no pipe or any of the securement material, as loaded, missing from the flatbed trailer which I transported." Mr. Soileau took photographs of the load at this final location, representing both that the photographs "show the load of 13 pieces of pipe and the securement, as loaded in Baton Rouge, Louisiana … and there was no pipe or any of the securement material missing in these photographs."  This affidavit testimony, Defendants represent, is uncontradicted.

Plaintiffs' opposition, however, sufficiently contravenes the conclusory affidavit of Mr. Soileau filed by Defendant.  While Plaintiffs acknowledged that they did not see the metal object that struck their car actually leave the bed surface of the tractor-trailer, both asserted that the object came from the exact direction of the truck immediately as they were changing lanes.  On this point, Mr. Woods responded as follows on questioning of defense counsel:

EXAMINATION BY MR. PONDER [Counsel for Defendants]:

Q.    But just to be clear, you didn't see any piece of iron or metal as you're alleging it to be flying off the surface of the surface of the trailer?  You didn't see that?

A.    No, I – I did not see.  The only thing that – I'm going to say whenever I went from lane 2 to lane 1, when I proceeded to get to lane 1, that – that similar piece of metal was airborne and in my windshield.

Q.    Already in the air?

A.    It was – it was like right there.

9

Mrs. Woods also described the sequence of events, explaining:

> A. … My husband got into the right lane. He - - since we had arrived in Houston, my husband told me to call my daughter-in-law and tell her we were there … and she could meet us for breakfast. I did this (indicating).
>
> Q. You did what?
>
> A. Reached over.
>
> Q. To your right?
>
> A. To my right to get my phone out of the pocket, the door pocket of the vehicle. And the next thing I knew my husband had his hand in front of my chest and he said: Oh my God. At that point in time things started hitting the vehicle … the iron, the rust, and it was rusty because it shows that … on the picture of the vehicle …."

Mrs. Woods testified that her husband then "pulled over to the shoulder to make sure [she] was okay."

Additionally, Mr. Woods described the debris that struck his vehicle as a piece of "angle iron" in his deposition.[5] When presented with a photograph of the trailer's purported load, Mr. Woods responded as follows upon questioning by defense counsel:

> Q. Are you able – in this particular photograph are you able to see any – any what you refer to as an angle iron anywhere?
>
> A. Well, basically, if – if you – if you are looking at it, what I consider angle iron is this piece right here (indicating).
>
> . . . .
>
> Q. In this particular photo is this – what you've encircled, is this a piece of wood or is this metal?
>
> A. Well, it could be both. I mean I'm looking at what it looks like appears to be and this appears to be angle iron. Whether it's wood or metal I'm looking at a photograph, so.

---

[5] When asked by counsel "[w]hat is an angle iron," Mr. Woods responded: "[P]eople refer to it as different things. I'm looking at it as just a piece of - - it comes in different sizes where you have this – it just forms a triangle, a triangle piece of iron."

> Q. Do you know - -
>
> A. So I cannot tell whether it's a piece of wood or metal; but if you take me out there, I could tell you.
>
> Q. Are you suggesting what you've encircled is what struck your Mercedes?
>
> A. What I'm what I'm looking at is circled as far as I can recall it looks awfully familiar. It - - it looks familiar what – what this piece is because it was a piece of what I consider something at an angle, a rusted piece of metal –
>
> Q. Uh-huh (affirmative response).
>
> A. - that struck the vehicle.
>
> . . . .
>
> Q. So you're saying this looks familiar?
>
> A. I say it looks familiar. I didn't say it was that. I say it looks familiar to what struck my vehicle.
>
> [Plaintiffs' Counsel]:
> You mean similar to it?
>
> THE WITNESS:
> Similar to it. Yeah, it looks similar to what – what hit my vehicle.

A reasonable inference from the testimony of Mr. Woods could lead the fact finder to conclude that the metal object that hit the Woods' vehicle came from the trailer. Mr. Soileau's statement in his affidavit was to the contrary: "No iron or steel angle irons were used to secure this load and none were present on the flat-bed trailer." Hence there is a factual dispute that can only be resolved through trial on the merits.

Like her husband, Mrs. Woods explained that she did not see the origin of the metal object that struck their car. However, when presented with the photographs of the purported load on the trailer, Mrs. Woods also offered testimony contravening

11

the version suggested by Defendants. She responded as follows on questioning of defense counsel:

> Q. The photograph that I showed Mr. Woods in his deposition of the - - of a flatbed trailer, have you ever - - the pipes on this trailer, do you recognize those pipes?
>
> A. What I - - what I - - what I would say is **this does not look like the size of the pipes that were on the bed.**
>
> Q. Do you think the pipes on the bed from your recollection were larger or smaller?
>
> A. Smaller.

(Emphasis added.) Albeit to a lesser degree than the recollection of her husband, Mrs. Woods account of the trailer's load disputes Mr. Soileau's affidavit. After evaluating the testimony and evidence at trial, a reasonable inference from the evidence may allow the fact finder to conclude that the metal object that struck Plaintiffs' vehicle did, indeed, come from the bed of Mr. Soileau's truck, and that Defendants are negligent.

The affidavits and deposition testimony from Mr. and Mrs. Woods undermine Defendants' position that they have offered a conclusive and uncontested showing that the metal-like object that struck Plaintiffs' vehicle did not originate from the tractor-trailer.

The parties' accounts also differ on the nature of the load and reveal ambiguities surrounding the metal object's origin. Whether styled as a credibility determination or one of weighing the evidence, either consideration is inappropriate on summary judgment. *See Prop. Ins. Ass'n of La. v. Theriot*, 09-1152 (La. 3/16/10), 31 So.3d 1012; *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730; *Smith v. City Bank & Trust Co.*, 18-664 (La.App. 3 Cir. 5/1/19), 271

So.3d 263; and *Meyer & Assoc., Inc. v. Coushatta Tribe of La.*, 14-1109 (La.App. 3 Cir. 1/27/16), 185 So.3d 222, *writ denied*, 16-369 (La. 4/22/16), 191 So.3d 1048.

Instead, such considerations, which are clearly required given the parties' differing summary judgment submissions, are not appropriate for summary judgment. Rather, a trial on the merits, where the fact finder can observe, evaluate, and weigh the trial testimony of the parties and make factual findings based on all the evidence and reasonable inferences from the evidence is required in this case.

Likewise, the summary judgment submissions do not rule out that a fact finder may alternatively conclude that Mr. Soileau, the truck's operator, failed to keep a proper lookout and negligently struck a metal like object on the roadway, causing it to become airborne and strike Plaintiffs' vehicle. Although not formally named and served, the "unidentified driver" was named as an individual defendant in Plaintiffs' petition. Indeed, the truck driver, subsequently identified as Mr. Soileau, admitted that the wheels of the trailer did, in fact, strike an object on the roadway and, using his rear view mirror, Mr. Soileau could see the object fly into the air behind his trailer until he lost sight of it. It is undisputed that Mr. Soileau was an employee of J.T. Wein, Inc. and that J.T. Wein, Inc. would be responsible for his negligence under respondeat superior. *See* La.Civ.Code 2320; s*ee also Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So.2d 131. Thus, we find that the trial court erred in entering summary judgment in this case and we reverse that decision.

**DECREE**

For the foregoing reasons, the summary judgment entered in favor of Defendants/Appellees, Morris H. Weinstein, L.L.C. and J.T. Wein, Inc. is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion. All costs are assigned to Defendants/Appellees.

**REVERSED AND REMANDED.**