Judgment rendered August 10, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,619-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF ROBERT DANIEL HYDE, JR.

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 21,563

Honorable John Marion Robinson, (*Pro Tempore*) Judge

* * * * *

| | |
|---|---|
| AYRES, WARREN, SHELTON, ET AL<br>By: John Robert Williams<br>    Jacob C. White | Counsel for Appellant<br>Mary Elizabeth Hyde<br>Donahue |
| WEINER, WEISS, & MADISON<br> By: Cliffe Charles Laborde, III<br>    Marjorie Lawrence Frazier | Counsel for Appellees<br>Robert Daniel Hyde, III<br>Stephen Patrick Hyde<br>Eva Marie Hyde Baird |

* * * * *

Before STEPHENS, THOMPSON, AND MARCOTTE, JJ.

**MARCOTTE, J.**

This appeal arises from the 26th Judicial District Court, Parish of Bossier, the Honorable John M. Robinson (*pro tempore*) presiding. Appellant, Mary Elizabeth Hyde Donahue, appeals the trial court's denial of her motion for summary judgment, and the granting of the motion for summary judgment filed by appellees, Robert Daniel Hyde, III and Stephen Patrick Hyde, which dismissed her claims against them with prejudice. For the following reasons we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

On May 15, 2019, Robert Daniel Hyde, Jr. ("Decedent") died testate in Bossier City, Louisiana. Decedent was married three times. With his first wife, Decedent had three children, Robert Daniel Hyde, III ("Robert"), Stephen Patrick Hyde ("Stephen"), and Eva Marie Hyde Baird ("Eva"), and a fourth was adopted, Mary Elizabeth Hyde Donahue ("Liz"). All of Decedent's children survived him, have attained the age of 24 years, and are neither physically nor mentally permanently incapable of taking care of their persons or estates. Decedent was married to his second wife, Shirley Ann Henry Gunstream Hyde ("Shirley"), in 1982, and the marriage ended in her death in 1996.

In her will, Shirley gave Decedent a usufruct for life over her residuary estate with the power to convert by sale, exchange, or any other means, any property subject to the usufruct. Naked ownership of the residuary estate was bequeathed to the Shirley Hyde Trust (the "Original Trust"), which was created pursuant to her will. Her will named Decedent as the Original Trust's income beneficiary for life and Robert, Stephen, Eva,

and Liz as the principal and successor income beneficiaries in equal parts. The will named Decedent as trustee of the Original Trust. The will included the following pertinent provisions:

> 2.2.12 If my spouse is a trustee and usufructuary, then I relieve my spouse (and co-trustees, if any) from any liability from the sale, exchange, or disposition of assets of the trust, even if such sale, exchange, or disposition converts a usufruct of a non-consumable into a usufruct of a consumable and my spouse decides the usufructuary is entitled to all the proceeds.
> ….
>
> [T]he trustee shall have the following powers to be exercised as they determine to be in the best interest of the beneficiaries:
> ….
>
>> 3.7.4 Enter into any agreement, including but not limited to, purchases, sales, exchanges, partitions, servitudes, easements, options, mortgages, pledges, leases, mineral leases and mineral options upon such terms as the trustee sees fit.
>> ….
>>
>> 3.7.12 Divide the trust into separate trusts for each principal beneficiary of for any other reason to assist in management. If the trustee divides the trust into more than one trust, each trust shall be governed by the provisions hereof.

On January 1, 2010, Decedent, in his capacity as trustee, and as permitted by the terms of Shirley's will, split the Original Trust into four separate trusts, one for each principal beneficiary of the Original Trust, subject to Decedent's usufruct. The trust at issue was named the Shirley Hyde Trust for the Benefit of Mary Elizabeth Hyde Donahue (the "Liz Trust"). Decedent was made the income beneficiary for life of the four trusts in favor of his children. Decedent was also named trustee of the four trusts.

2

Part of the property that was transferred to the Liz Trust was 500 shares of Budget Prepay, Inc. stock. On January 1, 2012, Decedent sold those shares of stock for $534,385.00.

On August 6, 2014, Hyde Real Estate, LLC transferred a 1.751-acre parcel of property located on Barksdale Blvd, Bossier City, Louisiana (the "Barksdale Property") to Decedent and the Liz Trust in exchange for redemption of the membership interest each owned in the LLC. Decedent received a 28.58% ownership interest in the Barksdale Property, and the Liz Trust received a 71.42% ownership interest. On November 6, 2014, Decedent entered into a construction contract to build a warehouse on the Barksdale Property. The project was completed in 2015. Decedent paid the contractor $621,540.00 from his personal funds for the construction of the warehouse.[1]

On November 14, 2018, Decedent executed an affidavit which stated in paragraph seven:

> Between 1998 and 2012, I made a number of gifts to the four principal beneficiaries/naked owners. Those gifts of cash given directly to them and gifts of cash made to a life insurance trust for their benefit (an insurance trust on the life [of] R. Daniel Hyde, Jr., of which the four were named equal beneficiaries). These cash gifts are summarized below.

The document then stated that Liz was given $252,312.00 in cash gifts, and $106,129.00 was given to "Children's Insurance Trust." The total gift value was $358,441.00.

The affidavit then stated:

> It is my intent that my usufruct over the cash given to, or for the benefit of [Robert, Stephen, Eva, and Liz] as set forth in

---

[1] The co-executors attached an affidavit signed by Mike Boggs, president of Boggs & Poole Contracting Group, Inc., which detailed the location and costs of constructing the warehouse. The co-executors also attached copies of eight bank drafts paid to Boggs & Poole by Decedent, dated December 4, 2014, to August 25, 2015.

Paragraph 7 above be relinquished. Further, it is my intent that these cash gifts be credited against the usufructuary debt, if any, that I may owe to [Robert, Stephen, Eva, and Liz] at my death.

Decedent died on May 15, 2019. On June 5, 2019, his son Robert filed a petition to file and execute Decedent's notarial will and for appointment of an executor. In his will, Decedent made particular bequests to Robert, Stephen, Eva, Geraldine Parker, and the Smokey Hyde-Beverly Trust. The remainder of his estate he left to Stephen and Robert. On June 6, 2019, the trial court ordered Decedent's will filed and confirmed the appointment of Robert as independent executor. Later, Robert and Stephen were appointed independent co-executors.

Between December 23, 2020, and January 12, 2021, Liz, Stephen, and John M. Frazier ("Frazier"), the trustee of the Liz Trust,[2] each individually executed a document titled "Partial Settlement Agreement" (the "Agreement"). The Agreement recited the facts related to the creation of the Original Trust and the Liz Trust. The Liz Trust's interest in the Barksdale Property and the remaining assets in the Liz Trust were distributed to Liz, with the exception of the following.

The Agreement acknowledged that Decedent's estate owes a reimbursement to the Liz Trust "as a result of his use of certain usufruct property of the Original Trust, before it was split into separate trusts, and his alienation of property of the Liz Trust, after it was split from the Original Trust." The Agreement stated that the amount of that reimbursement is $1,156,193.62. That amount was calculated based upon Liz Trust's 1/4 interest in the return of $2,830,921.02, which Decedent consumed, as

---

[2] Shirley's will named Frazier as successor trustee of the Original Trust.

usufructuary, from the Original Trust. That amount was partially offset by $343,686.52, which Decedent lent to Shirley's succession during its administration, and which then passed to the Original Trust as part of Shirley's residual estate. The net of the amount owed to the Liz Trust is $621,808.62. Decedent's estate also owed reimbursement to Liz in the amount of $534,385.00, based upon Decedent's sale of the 500 shares of Budget Prepay, Inc. stock held by the Liz Trust.

The Agreement stated that the co-executors claimed that Decedent's estate should receive credits for:

> 1) $358,441.00 in cash gifts made from Decedent to Liz from 1998 to 2012, which were the subject of his renunciation over the usufruct; and
>
> 2) $443,985.29, which equals 71.42% of the cost of the total improvements made by Decedent to the Barksdale Property.

Therefore, the co-executors claimed, Decedent's estate is entitled to offsets totaling $802,426.29, so the net amount of reimbursement owed to Liz is $353,767.33. The Agreement stated that the parties agreed to pay Liz that amount, reserving the determination of the two disputed amounts for resolution in the succession proceedings.

On March 4, 2021, Liz filed a petition for return of usufruct property. She named the co-executors as defendants. Liz stated that Decedent's debt to the Liz Trust should not be reduced by the amount of the cash gifts and the Liz Trust's share of the costs of improvements made to the Barksdale Property. Liz stated that she and the Liz Trust are separate juridical persons, and the law of usufructs over consumables and non-consumables, donations *inter vivos*, and improvements to usufruct property should apply. Liz asked that the disputed amount of $802,426.29 be returned to her.

5

On June 11, 2021, the co-executors filed a motion for summary judgment asking that Liz's claims against them be dismissed. The co-executors argued that the Liz Trust and Decedent were co-owners of the Barksdale Property, therefore, the law of co-ownership applies. At the time he had the warehouse built on the Barksdale Property, Decedent was the trustee of the Liz trust, which provided the implied consent of the naked owner to the construction of the improvement. The co-executors argueD that the Liz Trust owes Decedent's estate reimbursement of its share of either the cost of the warehouse, the warehouse's current value, or the enhanced value of the Barksdale Property. The cost to build the warehouse was $621,540.00; the Liz Trust's share of the cost (71.42%) is $443,985.29, which is what the co-executors argued it owes to Decedent's estate.

The co-executors also argued that Decedent satisfied the requirements for renunciation of his usufruct over the $358,441.00 in cash gifts he made to Liz from 1998 to 2012. According to the terms of Shirley's will, Decedent had a usufruct over the money left to the Liz Trust, and he was also the trustee of the trust. Under Louisiana law, title to all property left by Shirley to the Liz Trust vested in Decedent, as trustee, and he also functioned as the naked owner.

On June 11, 2021, Liz filed a motion for summary judgment claiming Decedent's estate owes her $802,426.69. Liz stated that the purported renunciation of Decedent's usufruct over the cash gifts he made to her, individually, occurred six years after his last cash gift to her. Liz also argued that there is no provision of law of donation that causes Decedent's cash donations to her in her individual capacity to offset the amount the

6

Decedent owed as usufructuary to the Liz Trust upon the termination of the usufruct.

Liz argued that she and the Liz trust are separate juridical persons. Liz stated that the cash donations *inter vivos* made to her by Decedent were completed upon delivery or transfer of checks into her account, were not burdened with any charges or conditions at the time of offer and acceptance, and became irrevocable upon acceptance. Liz contended that there is no legal basis that allowed Decedent to retroactively place conditions on already completed donations to her, and the purported renunciation cannot cause the donations made to her from 1998 to 2012 to offset amounts owed to the Liz Trust.

Regarding the improvement to the Barksdale Property, Liz argued that under La. C.C. art. 601, a usufructuary may not claim reimbursement from the naked owner for improvements that he does not remove or that cannot be removed. Therefore, Liz claimed, Decedent's estate is not entitled to claim reimbursement for improvements which decedent made to the Barksdale Property as the usufructuary during his lifetime. Liz argued that to allow Decedent's estate to receive reimbursement for improvements which he made while having full and exclusive control and enjoyment as usufructuary, undercuts La. C.C. art. 601. She stated that, as partial full owner, Decedent obtained benefits from the improvements which he would not have otherwise received if he were merely a usufructuary of the entire property.

The co-executors opposed Liz's motion for summary judgment, arguing that a trust is not a juridical person, and, thus, cannot own property. Title to property left in a trust vests in the trustee for the benefit of the beneficiary. The "owner" of any property left in trust for Liz was Decedent

7

in his capacity as trustee of the Liz Trust. The co-executors argued that whether Decedent had "full enjoyment" of the Barksdale Property is irrelevant and the law of donations does not apply. Decedent's renunciation of his usufruct over the cash gifts to Liz was not an attempt to place a condition or charge on the distributions or convert them into a non-gratuitous transfer after the fact.

Liz opposed the co-executors' motion for summary judgment again arguing that the law of usufruct should apply and that the cash donations were made to her and not the Liz Trust.

Following a hearing, on September 3, 2021, the trial court issued its written reasons for judgment. The trial court cited La. C.C. art. 626 about the renunciation of usufructs and stated:

> On the case at issue, the Decedent's affidavit renouncing usufruct over the cash gifts given to [Liz] (which includes the sale of the 500 shares of stock) between 1998 and 2012 constituted a unilateral juridical act. The affidavit clearly conveys the Decedent's intent to credit the cash gifts against the Decedent's usufructuary debt at his death and meets the statutory requirements for renunciation. Therefore, the renunciation was effective without the acceptance by the naked owner of the Liz Trust. At the time of the renunciation, the Decedent was both the naked owner of the Liz Trust as well as its usufructuary and trustee. As the [co-executors] indicated, there is no requirement of contemporaneousness regarding a renunciation in Louisiana law. Moreover, the Decedent also lacked the naked owner's written consent or court approval as required to complete the improvements to the Barksdale Property in his capacity as a usufructuary. Rather, the Decedent merely possessed implied consent as a co-owner of the property as well as naked owner of the Liz Trust. Though this result seems inequitable, there is no code article or jurisprudence which allows [Liz] to recover even though this outcome allows Decedent and his remaining estate to credit gifts to his children as offsets to a trust established for the benefit of those same children.

> Additionally, the most relevant portion of Shirley Hyde's will provides as follows:

> If my spouse (Decedent) is a trustee and usufructuary,
> then I relieve my spouse (and co-trustees, if any) from
> any liability from the sale, exchange, or disposition of
> assets of the trust, even if such sale, exchange, or
> disposition converts a usufruct of a non-consumable into
> a usufruct of a consumable and my spouse decides the
> usufructuary is entitled to all the proceeds.
>
> In accordance with the above language, which continued to
> govern Decedent's usufructuary powers even after the Original
> Trust was separated into four separate trusts, the Decedent
> should not be held liable for transactions that minimized the
> trust.

On September 21, 2021, the trial court signed a judgment denying Liz's motion for summary judgment and granting the co-executors' motion for summary judgment. The trial court dismissed Liz's claims against the co-executors for the return of usufruct property with prejudice. Liz now appeals.

## DISCUSSION

The parties agree that there are no facts in dispute. Liz argues that Decedent's renunciation of his usufruct over the cash gifts he made to her occurred years after the gifts were made to her and that the gifts were made to her in her individual capacity and not to the Liz Trust. She argues that each cash gift Decedent made to her constituted a separate complete donation that is not subject to modification or revocation without cause. Liz states that there is nothing in the record indicating that the gifts were distributed from any trust or that the cash was covered by a usufruct. Liz asserts that the cash gifts were made from the Decedent to his individual children. Liz states that Decedent was required to get court approval for the partial release of his usufruct under La. C.C. art. 626.

Liz also argues that the fact that Decedent owned an interest in the improved Barksdale Property does not provide his estate an offset for the

9

improvements he made as usufructuary. Liz again asserts that the applicable law is that governing usufructs. Liz asks that the trial court's ruling be reversed and that this Court determine that Decedent's estate owes Liz full reimbursement of the amount retained by it in the Agreement pending resolution of her claims. Liz further argues that part of the cash gifts allegedly made to her was in fact made to an insurance trust and not to her.

The co-executors argue that, because Decedent was both the trustee and naked owner of the Liz Trust, the only way for him to fully renounce his enjoyment as usufructuary over the cash gifts he made to Liz was for him to give the cash directly to Liz and not the Liz Trust. The co-executors state that Decedent's renunciation meets the requirements for a legal renunciation. The co-executors argue that there is no requirement that they must be able to trace the cash given by Decedent to Liz to the cash covered by the usufruct. The co-executors contend that La. C.C. art. 626 is not limited to renunciation of a whole usufruct. The co-executors state that donations and usufructs are separate unrelated concepts and the law of donations does not apply here.

The co-executors state that, because Decedent built the warehouse on the Barksdale Property in his individual capacity as co-owner, the laws of usufruct and naked ownership do not apply. The co-executors assert that Decedent had implied consent to build the warehouse as a co-owner, because he was the trustee of the Liz Trust and, therefore, the naked owner of the interest in the Barksdale Property held by the trust. The co-executors ask that the trial court's ruling be affirmed.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Larson v. XYZ Ins. Co.*, 16-0745 (La.

10

5/3/17), 226 So. 3d 412; *Jumper v. State Farm Mut. Auto. Ins. Co.*, 54,184 (La. App. 2 Cir. 3/9/22), 335 So. 3d 1001. The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

*Renunciation of Cash Gifts*

A trust, as the term is used in Louisiana law, is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another. La. R.S. 9:1731. Title to the trust property vests in the trustee alone, and a beneficiary has no title to or ownership interest in trust property, but only a civilian personal right vis-a-vis the trustee, to claim whatever interest in the trust relationship the

11

settlor has chosen to bestow.  *Bridges v. Autozone Props., Inc.*, 04-0814 (La. 3/24/05), 900 So. 2d 784.

Usufruct is a real right of limited duration on the property of another, and the features of the right vary with the nature of the things subject to it as consumables or nonconsumables.  La. C.C. art. 535.  If the things subject to the usufruct are consumables, the usufructuary becomes owner of them.  He may consume, alienate, or encumber them as he sees fit.  At the termination of the usufruct he is bound either to pay to the naked owner the value that the things had at the commencement of the usufruct or to deliver to him things of the same quantity and quality.  La. C.C. art. 538.  Cash is a consumable thing.  La. C.C. art. 536.

A usufruct terminates by an express written renunciation.  La. C.C. art. 626.  The renunciation of the usufruct is a disposition of the enjoyment in favor of the naked owner.  A. N. Yiannopoulos, 3 La. Civ. L. Treatise 373 (5th ed. 2021).  There is no requirement that the renunciation be made contemporaneously with the disposition of the thing in favor of the naked owner.  There is also no requirement in La. C.C. art. 626 that the usufructuary renounce his whole usufruct.  La. C.C. art. 582 provides in part that a usufructuary may release himself from the obligation to make repairs by abandoning the usufruct or, with the approval of the court, a portion thereof.  Article 582 applies to abandonment of a usufruct, not renunciation.

Here, Decedent, using express written language, renounced his usufruct over the $252,312.00 in cash gifts he made directly to Liz between 1998 and 2012, and the $106,129.00 in cash that was given to the Children's Insurance Trust.  Decedent, as trustee, was the naked owner of the Liz Trust, so any renunciation of his usufruct over money held in the Liz Trust in favor

12

of the naked owner, would have resulted in the cash gifts going to him and not Liz. To truly renounce his usufruct in favor of the final naked owner of the property held in the trust, Liz, he had to give the cash directly to her.

The parties have stipulated that the $252,312.00 in cash gifts were made directly to Liz. Liz may not receive a reimbursement for that amount. However, the record is unclear whether Liz ultimately received the $106,129.00 in cash that was given to the "Children's Insurance Trust" described in paragraph seven of Decedent's renunciation. The trial court must determine what happened to that cash, and should it discover that the cash held by the "Children's Insurance Trust" was not given to Liz, the trial court must reduce the cash gift offset by that amount.

*Reimbursement for Improvement to Co-Owned Property*

Ownership of the same thing by two or more persons is ownership in indivision. In the absence of other provisions of law or juridical act, the shares of all co-owners are presumed to be equal. La. C.C. art. 797. La. C.C. art. 804 provides:

> Substantial alterations or substantial improvements to the thing held in indivision may be undertaken only with the consent of all the co-owners.

> When a co-owner makes substantial alterations or substantial improvements consistent with the use of the property, though without the express or implied consent of his co-owners, the rights of the parties shall be determined by Article 496. When a co-owner makes substantial alterations or substantial improvements inconsistent with the use of the property or in spite of the objections of his co-owners, the rights of the parties shall be determined by Article 497.

Here, Decedent used his personal funds to build the warehouse, an improvement, on the Barksdale Property, in which held a 28.58% interest in as co-owner. The remaining ownership interest of 71.42% was held by the

13

Liz Trust.  Decedent built the warehouse as a co-owner, and since Decedent was also the trustee of the Liz Trust, he provided implied consent to the improvement.

La. C.C. art. 804 states that a substantial improvement to co-owned property may be completed only with the consent of the co-owners.  The article then specifies which Louisiana Civil Code articles apply when there is an unconsented-to improvement made by a co-owner that was either consistent or inconsistent with the use of the property.  In the case of an unconsented-to improvement that is consistent with the use of the property, the co-owner who made the improvement must be reimbursed either the cost of the materials and of the workmanship, or their current value, or the enhanced value of the immovable.  It stands to reason that if a co-owner is owed reimbursement for an improvement he made that is consistent with the use of the co-owned property, even though the other co-owner did not consent to that improvement, then a co-owner is also owed reimbursement when he makes an improvement to co-owned property with the consent of the other co-owner.

In *Sampognaro v. Sampognaro*, 41,664 (La. App. 2 Cir. 2/14/07), 952 So. 2d 775, *decision clarified on reh'g* (4/11/07), *writ denied*, 07-0937 (La. 6/22/07), 959 So. 2d 500, a husband and wife, during the marriage, jointly executed a mortgage and promissory note to secure funds to construct a house on land they co-owned equally.  The former husband exercised exclusive use of the property after the couple separated, and he sought reimbursement from his former spouse for the construction costs of building the home.  The trial court awarded him a reimbursement for construction expenses.  The former wife contended that the trial court erred, and that

14

reimbursement under La. C.C. arts. 804 and 496 did not apply, because the parties consented to the improvement. This Court stated that reimbursement for a co-owner's costs of improvements is the general rule, and this Court affirmed the trial court's ruling regarding reimbursement of construction costs.[3]

We find that the trial court was correct in ruling that Decedent's estate is owed reimbursement for the construction costs in building the warehouse in proportion to the ownership interest in the Barksdale Property held by the Liz Trust.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed in part, reversed in part, and remanded. The part of the ruling granting Decedent's estate an offset for the cash gifts in the amount of $252,312.00, given by Decedent directly to Mary Elizabeth Hyde Donahue, is affirmed. The part of the ruling granting Decedent's estate an offset for the construction costs for building the warehouse on the Barksdale Property is affirmed. The part of the ruling granting Decedent's estate an offset for the cash gift made to the "Children's Insurance Trust," a life insurance trust for the benefit of Mary Elizabeth Hyde Donahue and her siblings, in the amount of

---

[3] This Court stated:

> In resolving co-ownership issues which are not precisely addressed in the specific code articles for co-ownership, courts will refer to the principles in the law regarding ownership, succession, and partnership…. Although Article 804 does not directly address this situation where the co-owners have consented to the improvement, reimbursement to the co-owner is analogous to the partnership principle reflected in La. C.C. art. 2803, which provides for restoring a partner's contribution to capital according to the contribution made.

*Id*. at n. 1.

15

$106,129.00, is reversed.  The case is remanded to the trial court for it to ascertain whether Mary Elizabeth Hyde Donahue received the cash from that life insurance trust, and if she did not, the trial court must reduce the cash gift offset by that amount.  The costs of the appeal are assessed one-half to Mary Elizabeth Hyde Donahue and one-half to Decedent's succession.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**